# Illinois Official Reports

## Supreme Court

---

### *In re Jordan G.*, 2015 IL 116834

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* JORDAN G., a Minor (The People of the State of Illinois, Appellant, v. Jordan G., Appellee). |
| Docket No. | 116834 |
| Filed | February 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Richard Walsh, Judge, presiding. |
| Judgment | Circuit court judgment affirmed in part and reversed in part. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz and Jon Walters, Assistant State's Attorneys, of counsel), for the People. |
| | Abishi C. Cunningham, Jr., Public Defender, of Chicago (Lester Finkle and Kim L. Sorrells, Assistant Public Defenders, of counsel), for appellee. |
| | Jonathan K. Baum, of Katten, Muchin Rosenman LLP, of Chicago, and Jonathan E. Lowy, Robert B. Wilcox, Jr., and Alla Lefkowitz, of Washington, D.C., for *amici curiae* Brady Center to Prevent Gun Violence *et al.* |

Justices                    JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.


**OPINION**

¶ 1    In this direct appeal, we are asked to consider the constitutionality of certain sections of the aggravated unlawful use of a weapon (AUUW) statute. 720 ILCS 5/24-1.6 (West 2012). Respondent, 16-year-old Jordan G., was charged by petition for adjudication of wardship under the Juvenile Court Act of 1987 with three counts of AUUW and one count of unlawful possession of a firearm (UPF). The circuit court granted respondent's motion to dismiss the petition, declaring the AUUW statute unconstitutional. The State appealed the circuit court's ruling directly to this court under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). For the following reasons, we now affirm in part, reverse in part, and remand for further proceedings consistent with our opinion.


¶ 2                                    BACKGROUND

¶ 3    In April 2013, the State filed a petition for adjudication of wardship charging the minor respondent with three counts of AUUW and one count of UPF. Specifically, the petition alleged that respondent was a delinquent minor because he carried in a vehicle an uncased, loaded, and immediately accessible firearm in violation of section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2012)); carried a handgun in a vehicle when he was under 21 years of age in violation of section 24-1.6(a)(1), (a)(3)(I) (under 21 restriction) (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2012)); and carried a firearm in a vehicle without having been issued a currently valid Firearm Owner's Identification (FOID) card in violation of section 24-1.6(a)(1), (a)(3)(C) (FOID card requirement) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012)). The UPF count alleged that respondent, being a person under 18 years of age, knowingly possessed a firearm of a size which may be concealed upon the person in violation of section 24-3.1(a)(1) of the Code. 720 ILCS 5/24-3.1(a)(1) (West 2012).

¶ 4    Thereafter, respondent filed a motion to dismiss, contending that the AUUW statute had been found unconstitutional by the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933, 941 (7th Cir. 2012), as violating the second amendment right to bear arms for self-defense outside the home. Following a hearing, the circuit court agreed with respondent, ruling that section 24-1.6 was held facially unconstitutional in its entirety by *Moore*, and that the circuit court was bound by the Seventh Circuit decision. Accordingly, the court dismissed the three AUUW counts, but denied the motion as to the unlawful possession of a firearm count based upon respondent's age as being under 18.

¶ 5    The State subsequently filed a motion to reconsider. At the time of the hearing on the motion, this court had decided *People v. Aguilar*, 2013 IL 112116, where we initially held that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute violated the second amendment right to keep and bear arms. In light of *Aguilar*, the State conceded that count of the petition had been properly dismissed. Nevertheless, the State argued that the remaining counts remained

- 2 -

constitutionally valid because they required proof of independent aggravating factors. The State noted *Aguilar*'s admonishment that the right to a firearm outside the home for self-defense was not unlimited and was subject to meaningful regulation. The State further noted this court's citation with approval in *Aguilar* to cases recognizing that restricting the availability of firearms to those younger than 21 years of age does not offend the second amendment.

¶ 6     The trial court denied the State's motion to reconsider, holding that because an element of both the under 21 restriction and the FOID card requirement of the AUUW statute involved a prohibition on the carrying of a gun outside the home, those provisions were unconstitutional under *Moore*. The State appealed directly to this court. Ill. Const. 1970, art. VI, § 4(b); Ill. S. Ct. R. 603 (eff. Feb. 6, 2013). We allowed the Brady Center to Prevent Gun Violence, the City of Chicago, and the Major Cities Chiefs Association to file an *amicus* brief in support of the State.

¶ 7     During the pendency of the appeal, this court issued its modified opinion in *Aguilar*, holding that the Class 4 form of AUUW set forth in section 24-1.6(a)(1), (a)(3)(A), (d) of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)), which made it unlawful for a person to possess an uncased, loaded and immediately accessible firearm except when the person was on his land or in his abode or fixed place of business, was a comprehensive ban, rather than a reasonable regulation, on the right to possess and use an operable firearm for self-defense outside the home. *Aguilar*, 2013 IL 112116, ¶ 21. Accordingly, this court held that section to be facially unconstitutional because it violated the second amendment right to keep and bear arms. *Id*. ¶ 22.

¶ 8                                                          ANALYSIS
¶ 9                                      Constitutionality of the AUUW Statute
¶ 10     At issue in this case is whether the sections of the AUUW statute under which respondent was charged violate the second amendment. Statutes are presumed constitutional, and we have a duty to construe the statute in a manner that upholds its validity and constitutionality if it can be reasonably done. *Aguilar*, 2013 IL 112116, ¶ 15. The party challenging the constitutionality of a statute carries the burden of proof. *Id*. Whether a statute is constitutional is a question of law to be reviewed *de novo*. *Id*.

¶ 11     At the time respondent was charged, the AUUW statute provided, in pertinent part:
> "§ 24-1.6. Aggravated unlawful use of a weapon.
>
> (a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; [and]
>>
>> ***
>>
>> (3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

     \*\*\*

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card; or

     \* \* \*

(I) the person possessing the weapon was under 21 years of age and in possession of a handgun as defined in Section 24-3, unless the person under 21 is engaged in lawful activities under the Wildlife Code or described in subsection 24-2(b)(1), (b)(3), or 24-2(f)." 720 ILCS 5/24-1.6 (West 2012).

¶ 12 We initially address the trial court's ruling that under *Moore*, both the under 21 restriction under subsection (a)(1), (a)(3)(C) and the FOID card requirement under subsection (a)(1), (a)(3)(I) were unconstitutional because an element of both sections includes a prohibition on the right to carry a firearm outside the home. The State maintains that the trial court erred in its apparent belief that *Moore* held that any firearm restriction that includes a prohibition from carrying a weapon outside the home was necessarily unconstitutional. We agree.

¶ 13 Neither *Moore* nor *Aguilar* supports, much less compels, the circuit court's reasoning in finding the under 21 restriction and the FOID card requirement facially unconstitutional. Rather, *Moore* held unconstitutional a "blanket prohibition on carrying gun[s] in public," which categorically prohibits the possession and use of an operable firearm for self-defense outside the home. *Moore*, 702 F.3d at 940. The Seventh Circuit expressly recognized in *Moore* that the Illinois legislature could implement sensible regulations for the public carriage of handguns without running afoul of the second amendment. *Id*. at 941.

¶ 14 Thereafter, in *Aguilar*, this court adopted the holding in *Moore* that Illinois's " 'flat ban on carrying ready-to-use guns outside the home,' " as embodied in the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) is unconstitutional on its face. *Aguilar*, 2013 IL 112116, ¶ 19 (quoting *Moore*, 702 F.3d at 940). In doing so, we emphatically made clear that, "we are in no way saying that" the right to possess and use a firearm for self-defense outside the home "is unlimited or is not subject to meaningful regulation." *Id.* ¶ 21. As this court explicitly stated in *Aguilar*, "our finding of unconstitutionality in this decision is specifically limited to the Class 4 form of AUUW, as set forth in section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute." *Id.* ¶ 22 n.3. We specifically held that "[w]e make no finding, express or implied, with respect to the constitutionality or unconstitutionality of any other section or subsection of the AUUW statute." *Id.* Thus, contrary to the circuit court's ruling, neither *Moore* nor *Aguilar* compel a finding that subsection (a)(1), (a)(3)(C) or subsection (a)(1), (a)(3)(I) are facially unconstitutional.

¶ 15                                         Severability

¶ 16 Nevertheless, respondent contends that subsections (a)(3)(C) and (a)(3)(I) are not severable from the provision found to be unconstitutional in *Aguilar*. Respondent maintains that the statute, as enacted in 2000, was a comprehensive statute with interrelated provisions and that the legislature would not have passed the under 21 restrictions or the FOID card requirements without the provision now held to violate the second amendment. This court has now rejected this argument in *People v. Mosley*, 2015 IL 115872, ¶¶ 27-31, a case that also

came before this court on direct appeal, involving the constitutionality of subsections (a)(3)(C) and (a)(3)(I).

¶ 17 There, we explained that the issue of severability involves a question of statutory interpretation. *Id.* ¶ 29. The authority to sever an invalid portion from those portions which remain valid may arise either from a specific severability provision in the statute, if one exists, or from the Statute on Statutes' general severability provision. Because the offense of AUUW does not contain its own specific severability provision, we looked to the Statute on Statutes' general severability provision. *Id.* ¶ 30. That statute provides that the invalidity of one provision of a statute "does not affect other provisions *** which can be given effect without the invalid *** provision." 5 ILCS 70/1.31 (West 2012).

¶ 18 Pursuant to the Statute on Statutes, we held that we must determine whether the valid and invalid provisions "are essentially and inseparably connected in substance," such that the legislature would not have enacted the valid provisions absent the invalid ones. *Mosley*, 2015 IL 115872, ¶ 30. An unconstitutional portion of the statute may be severed from the remaining portions "if what remains is complete in and of itself, and is capable of being executed wholly independently of the severed portion." *Id.* (citing *People v. Pomykala*, 203 Ill. 2d 198, 209-10 (2003), and *People v. Sanders*, 182 Ill. 2d 524, 534 (1998)).

¶ 19 Applying this framework, and in reaching our conclusion, we relied on the reasoning in *People v. Henderson*, 2013 IL App (1st) 113294. There, the appellate court explained that subsection (a)(3)(A) is only one of several aggravating factors that can operate in conjunction with subsections (a)(1) and (a)(2) to comprise the substantive AUUW offense. Removing the particular subsection which was struck down by *Aguilar* does not undermine the completeness or executability of the remaining factors. Therefore, it could not be concluded that the one unconstitutional provision is "so intertwined with the rest of the statute that the legislature intended the statute to stand or fall as a whole." (Internal quotation marks omitted.) *Id.* ¶ 22. Finding the reasoning in *Henderson* sound, we concluded in *Mosley* that "the legislature would find that subsections (a)(3)(C) [the FOID card requirement] and (a)(3)(I) [the under 21 restriction] can stand independently." *Mosley*, 2015 IL 115872, ¶ 31. We continue to hold that severing subsection (a)(3)(A) "undermines neither the completeness of, nor the ability to, execute the remaining subsections." *Id.*

¶ 20 Second Amendment Rights of Those Under the Age of 21

¶ 21 We next consider respondent's facial challenge, contending that subsections (a)(1), (a)(3)(C) and (a)(1), (a)(3)(I) violate the second amendment rights of those under 21 years of age. Respondent contends that these provisions under which he was charged constitute a "blanket age restriction" against firearm possession. Although he concedes that the possession of handguns by minors is conduct falling outside the scope of the second amendment, he maintains that these provisions are facially unconstitutional because they are incompatible with *Heller* and *McDonald* and the rights of 18- to 20-year-olds to have the "quintessential" means of self-defense. He argues that they unlawfully prohibit 18- to 20-year-olds from the possession and use of handguns for self-defense outside the home, and bar them from firearm ownership without parental permission and without any individualized determination of dangerousness.

¶ 22    This court recently considered and rejected a second amendment challenge to subsections (a)(1), (a)(3)(C) and (a)(1), (a)(3)(I) in *Mosley*. As we explained, the prevailing framework this court has adopted for analyzing a second amendment challenge is two-fold. First the court must make a threshold inquiry into whether the restricted activity is protected by the second amendment. Under this threshold analysis, the court conducts a textual and historical analysis to determine whether the challenged state law imposes a burden on conduct understood to be within the scope of the second amendment's protection at the time of ratification. *Mosley*, 2015 IL 115872, ¶ 34 (citing *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41); see also *Ezell v. City of Chicago*, 651 F.3d 684, 700-04 (7th Cir. 2011). If the challenged law regulates activity falling outside the scope of the second amendment right as it was understood at the relevant historical time, then the regulated activity is categorically unprotected, and is not subject to further second amendment review. *Id*. However, if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then the court, applying the appropriate level of scrutiny, conducts an inquiry into the strength of the state's justification for regulating or restricting the activity. *Id*.

¶ 23    Applying these principles, we first consider whether the statutes' restrictions burden conduct that traditionally falls within the scope of second amendment protection. As the United States Supreme Court explained in *Heller*, "the right secured by the Second Amendment is not unlimited," and recognized the constitutionality of several "longstanding prohibitions on the possession of firearms." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Court emphasized that its list of presumptively lawful regulatory measures provided only examples and did "not purport to be exhaustive." *Id*. at 627 n.26.

¶ 24    Thereafter, in *Aguilar*, this court considered the constitutionality of section 24-3.1(a)(1) of the UPF statute, which makes it unlawful for those under 18 to possess a firearm of a size which may be concealed on his person. 720 ILCS 5/24-3.1(a)(1) (West 2012); *Aguilar*, 2013 IL 112116, ¶¶ 24-28. We recognized that the second amendment right to possess firearms is "subject to meaningful regulation." *Id*. ¶ 21. We cited with approval several cases finding it evident from a review of the relevant historical record that age based regulations on minors' access to firearms for the purpose of ensuring public safety were commonplace and persisted well beyond the Founding Era. *Id*. ¶ 27 (citing *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012), *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009), and *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387-88 (D. Mass. 2013)). We stated that these cases explained that although minors were in many instances permitted or required to possess firearms for military service, "nothing like *a right* for minors to own and possess firearms has existed at any time in this nation's history." (Emphasis in original.) *Id*. Accordingly, we concluded that "the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection." *Id*.

¶ 25    Notably, the term "minor" must be considered in the context of the right at issue, and as historically understood, generally applied to individuals under the age of 21 and remained under 21 in most states until the 1970s. *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d at 201-02, 204 n.17; *Powell*, 926 F. Supp. 2d at 388; see also *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013) (finding Texas's statutory scheme barring 18- to 20-year-olds from carrying handguns in public was consistent with longstanding traditions of imposing age and safety based restrictions on the ability to access arms). Thus, we find our conclusion in *Aguilar*, that age

based restrictions on the right to keep and bear arms are historically rooted, applies equally to those persons under 21 years of age. We confirmed this conclusion in *Mosley*, where we held that the public carrying of firearms by those persons under 21 years of age is conduct that falls outside the scope of the second amendment, and held that "neither subsection (a)(3)(C) nor (a)(3)(I) violates the second amendment rights of *** 18- to 20-year-old persons." *Mosley*, 2015 IL 115872, ¶¶ 36-38. For all of these reasons, we reject respondent's second amendment challenge to subsections (a)(1), (a)(3)(C) and (a)(1), (a)(3)(I) of the AUUW statute.

¶ 26                    Second Amendment as Applied to Delinquent Minors

¶ 27    Lastly, the State asks this court to "clarify" our holding in *Aguilar*, that "on its face, the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) violates the right to keep and bear arms, as guaranteed by the second amendment." *Aguilar*, 2013 IL 112116, ¶ 22. The State argues that respondent was a delinquent minor who violated the terms of his probation by possessing firearms. The State maintains that because this type of individual is not the law-abiding citizen the United States Supreme Court recognized as having second amendment rights, "legislation prohibiting such criminals from possessing firearms comports with the Second Amendment and is constitutional." Therefore, the State maintains that subsection (a)(3)(A) can be validly applied to respondent.

¶ 28    Essentially, the State asks this court to overrule our holding in *Aguilar* that the Class 4 form of section 24-1.6 (a)(1), (a)(3)(A), (d) is unconstitutional on its face and is void *ab initio*. We decline the State's invitation to revisit our holding. Furthermore, this particular provision in the AUUW statute struck down in *Aguilar* as facially unconstitutional is not directed at prohibiting delinquent minors' rights to possess firearms or otherwise directed at regulating their conduct. Thus, whether legislation prohibiting those who have previously been adjudicated delinquent from possessing firearms would comport with the second amendment is not before us. Accordingly, for all of these reasons, we decline the State's invitation to address this issue.

¶ 29                                CONCLUSION

¶ 30    For the reasons set forth above, we affirm the trial court's judgment, dismissing the charges based on the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), which we found to be facially unconstitutional in *Aguilar*. Further, we reverse the trial court's judgment dismissing the charges based on sections 24-1.6(a)(1), (a)(3)(C) and (a)(3)(I), which we find to be constitutional and severable from the unconstitutional provision of the statute. Accordingly, we remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 31    Circuit court judgment affirmed in part and reversed in part.
¶ 32    Cause remanded.