# Illinois Official Reports

## Supreme Court

***People v. Burns*, 2015 IL 117387**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDWARD BURNS, Appellant. |
| Docket No. | 117387 |
| Filed | December 17, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thomas Davy, Judge, presiding. |
| Judgment | Appellate court judgment reversed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Adrienne N. River, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Freeman, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

Chief Justice Garman specially concurred, with opinion, joined by Justice Thomas.

**OPINION**

¶ 1    After a bench trial, defendant was found guilty of violating section 24-1.6(a)(1), (a)(3)(A) of the aggravated unlawful use of a weapon (AUUW) statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) and was sentenced to 10 years' imprisonment. Defendant appealed, arguing that his conviction must be reversed because section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute was found to be unconstitutional in *People v. Aguilar*, 2013 IL 112116.

¶ 2    The appellate court affirmed defendant's conviction, finding that, in *Aguilar*, this court limited its finding of unconstitutionality to the "Class 4 form" of the offense. 2013 IL App (1st) 120929. The appellate court then held that the "Class 2 form" of the offense, which is applicable to felons, like defendant, is constitutional and enforceable. *Id.* ¶ 27.

¶ 3    Defendant filed a petition for leave to appeal, pursuant to Illinois Supreme Court Rules 315 and 612 (Ill. S. Ct. R. 315 (eff. July 1, 2013); R. 612 (eff. Feb. 6, 2013)), which we granted. We now reverse the judgment of the appellate court.

¶ 4                                    BACKGROUND

¶ 5    On June 13, 2009, at about 4 a.m., two police officers in a marked police squad car responded to a dispatch call of "shots fired" in the area of 73rd and Blackstone in the city of Chicago. As the officers approached that location, they saw three men getting into a black Nissan, which was parked on 73rd Street, facing east. A woman was sitting in the driver's seat.

¶ 6    Officer McDonough, who was driving the police car, pulled up to the parked Nissan, "nose-to-nose," blocking the Nissan's exit. As Officer McDonough was exiting the police car, he saw the man who had been sitting in the front passenger seat of the Nissan—later identified as defendant, Edward Burns—exit the car with a gun in his hand. When the officer ordered defendant to "Stop, put your hands up," defendant tossed the handgun back into the car and fled on foot. Officer McDonough pursued defendant and, at one point during the chase, saw defendant throw an object to the ground. Officer McDonough recovered the object, which he discovered was a magazine, or "clip," loaded with 9-millimeter rounds and then continued to pursue defendant, who appeared to be doubling back to the parked Nissan.

¶ 7    When defendant arrived back at the Nissan, he was detained by Officer McDonough's partner, Officer Sobczyk. While Officer McDonough was pursuing defendant, Officer Sobczyk had retrieved a gun from the front passenger seat of the Nissan. The gun had no clip but had one live 9-millimeter round in the chamber. When Officer McDonough returned to the scene, he found that the clip he had retrieved during the chase fit the gun recovered from the car.

¶ 8 Defendant was arrested and later charged by an indictment which contained eleven counts: Count I alleged that defendant was an armed habitual criminal (720 ILCS 5/24-1.7 (West 2008)), counts II and III alleged unlawful use of a weapon by a felon (720 ILCS 5/24-1.1 (West 2008)), and counts IV through XI alleged aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a) (West 2008)).

¶ 9 The AUUW statute provides, in pertinent part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person ***[,] or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town ***; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; ***

***

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]

* * *

(d) Sentence. Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years. Aggravated unlawful use of a weapon by a person who has been previously convicted of a felony in this State or another jurisdiction is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24-1.6 (West 2008).

¶ 10 Subsequently, on the State's motion, the circuit court of Cook County entered an order of *nolle prosequi* on counts V, VII, IX, and XI—four counts alleging AUUW based on defendant's possession of a firearm without a valid Firearm Owner Identification (FOID) card (720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(C) (West 2008)). The State then elected to proceed against defendant on counts I, II, III, VI, and X. Count VI alleged AUUW based on the possession of an uncased, loaded and readily accessible firearm in a vehicle, in violation of section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute; count X alleged AUUW based on the possession of an uncased, loaded and readily accessible firearm on a public way, in violation of section 24-1.6(a)(2), (a)(3)(A). On November 28, 2011, a bench trial was held. At the conclusion of the bench trial, defendant was found guilty on all counts.

¶ 11 Defendant filed a motion to reconsider in the circuit court. Defendant asserted that the State failed to prove that he had a prior felony conviction, which was a necessary element of the charged offenses. At trial, the State had entered into evidence a certified copy of conviction for a "Damion Smith." Although the State alleged that defendant used the name "Damion Smith" as an alias, the State presented no proof that defendant was the individual named in the certified copy of conviction. Thus, defendant argued, the State, having failed to prove that he

- 3 -

had a prior felony conviction, failed to prove him guilty beyond a reasonable doubt and his convictions must be vacated.

¶ 12    The circuit court vacated defendant's convictions for armed habitual criminal and unlawful use of a weapon by a felon, under counts I, II, and III, agreeing with defendant that a prior felony conviction was a necessary element of those offenses which the State failed to prove. However, the circuit court denied defendant's motion with regard to his AUUW convictions, under counts VI and X. The court ruled that a prior felony conviction is not an element of AUUW but, rather, is a sentencing factor to be proven at the time of sentencing. The matter then proceeded to sentencing on defendant's conviction under count VI, for AUUW pursuant to section 24-1.6(a)(1), (a)(3)(A) of the statute.[1]

¶ 13    At the sentencing hearing, the State presented, for the first time, a certified copy of defendant's record as proof that he had a prior felony conviction (possession of a controlled substance in case number 99-CR-21991, which was a different felony conviction from the one submitted at trial). Based on this evidence, the circuit court ruled that, pursuant to subsection (d) of the AUUW statute, defendant's conviction for AUUW was a Class 2 felony. However, the circuit court further found that, because the State had presented additional evidence in aggravation, showing that defendant also had two other prior felony convictions, a Class X sentence was mandated. Accordingly, the circuit court imposed a sentence of 10 years' imprisonment.

¶ 14    Defendant appealed. In his initial brief, filed on March 12, 2012, defendant argued that his AUUW conviction must be vacated because the section of the AUUW statute under which he was convicted—section 24-1.6(a)(1), (a)(3)(A)—unconstitutionally infringes on the right to keep and bear arms as guaranteed by the second amendment of the United States Constitution (U.S. Const., amend. II).

¶ 15    On September 12, 2013, while defendant's appeal was still pending, this court issued its decision in *Aguilar*, 2013 IL 112116. In *Aguilar*, the defendant was convicted of AUUW pursuant to section 24-1.6(a)(1), (a)(3)(A) of the statute, which was a Class 4 felony pursuant to section (d) of the statute. We reversed the defendant's conviction for AUUW, holding that section 24-1.6(a)(1), (a)(3)(A) is facially unconstitutional because it operates as a flat ban on the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution.

¶ 16    Subsequently, we modified our decision in *Aguilar* upon denial of the State's petition for rehearing. In our modified opinion, we added language stating that our finding of unconstitutionality was limited to the "Class 4 form" of AUUW, which referred to a conviction which was subject to sentencing as a Class 4 felony pursuant to section (d) of the statute. See *id.* ¶ 22 n.3.

¶ 17    Relying on our modified opinion in *Aguilar*, the appellate court in the case at bar affirmed defendant's AUUW conviction. 2013 IL App (1st) 120929. The appellate court noted that, "[i]n general, where a statute initially sets forth the elements of the offense, then separately provides sentencing classifications based on other factors, these factors only enhance the punishment and do not create a new offense." *Id.* ¶ 24. Nevertheless, the court interpreted our

---

[1]Because defendant was in possession of a single weapon, defendant's conviction for AUUW under count X, merged with his conviction under count VI.

decision in *Aguilar* to mean that our holding of unconstitutionality with respect to section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, was limited to the so-called "Class 4 form" of that offense. *Id.* Further, the appellate court concluded that felons lack second amendment rights and, as a result, held that a conviction under section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute which, pursuant to subsection (d), is a Class 2 felony because the defendant has a prior felony conviction, is not unconstitutional. The appellate court then concluded that this so-called "Class 2 form" of the offense is enforceable and, thus, defendant's conviction could stand. *Id.* ¶ 27.

¶ 18                                                  ANALYSIS

¶ 19        The sole issue before this court is, as it was in the appellate court, whether section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) is facially unconstitutional because it violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II). This is a question of law, which is subject to *de novo* review. *People v. Zimmerman*, 239 Ill. 2d 491, 497 (2010).

¶ 20        Defendant argues that the appellate court erred when it held that the "Class 2 form" of aggravated unlawful use of a weapon was constitutional. Defendant contends that a "Class 2 form" of aggravated unlawful use of a weapon does not exist. There is only one offense of AUUW based on section 24-1.6(a)(1), (a)(3)(A) and a prior felony conviction is not an element of that offense. Rather, a prior felony conviction is a sentencing factor which elevates the offense, for penalty purposes, from a Class 4 felony to a Class 2 felony. See 720 ILCS 5/24-1.6(d) (West 2008). Moreover, defendant contends that, in *Aguilar*, 2013 IL 112116, this court held section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute *facially* unconstitutional. For that reason, defendant argues that his conviction, which is based on a violation of the same provision—section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute—must be reversed. We agree.

¶ 21        In *Aguilar*, this court held that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute operates as an absolute ban on an individual's right to possess a gun for self-defense outside the home and, as such, is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II). In so ruling, we relied heavily on the Seventh Circuit's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), which applied the holdings of the United States Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010), and held that "the Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." *Moore*, 702 F.3d at 942. In *Aguilar*, we expressly adopted the analysis and holding in *Moore*, that section 24-1.6(a)(1), (a)(3)(A) of our AUUW statute operates as a " 'flat ban on carrying ready-to-use guns outside the home,' " and, therefore, held it to be unconstitutional on its face. *Aguilar*, 2013 IL 112116, ¶ 19 (quoting *Moore*, 702 F.3d at 940). Since *Aguilar* was decided, we have reaffirmed its central holding of the statute's facial unconstitutionality in two unanimous opinions, *People v. Mosley*, 2015 IL 115872, ¶ 24 (recognizing that *Aguilar* held section 24-1.6(a)(1), (a)(3)(A), (d) of the statute facially unconstitutional), and *In re Jordan G.*, 2015 IL 116834, ¶ 7 (same).

¶ 22        Admittedly, in *Aguilar*, we specifically limited our holding of facial invalidity to a so-called "Class 4 form" of the offense. See *Aguilar*, 2013 IL 112116, ¶ 21. However, we now

acknowledge that our reference in *Aguilar* to a "Class 4 form" of the offense was inappropriate. No such offense exists. There is no "Class 4 form" or "Class 2 form" of AUUW.

¶ 23        The elements of the offense of AUUW are contained in subsection (a) of the statute (720 ILCS 5/24-1.6(a) (West 2008)). See *Zimmerman*, 239 Ill. 2d at 499. Pursuant to subsection (a), a person commits the offense of AUUW when he or she knowingly carries or possesses "any pistol, revolver, stun gun or taser or other firearm" "on or about his or her person or in any vehicle" or "on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town" and one of nine factors is present. 720 ILCS 5/24-1.6(a) (West 2008). Subsection (a) sets forth the conduct which the legislature proscribed. *Zimmerman*, 239 Ill. 2d at 499. To obtain a conviction, the State need not prove anything more.

¶ 24        In a separate subsection entitled "Sentence," subsection (d) provides that the offense of AUUW is a Class 4 felony. It then lists certain factors which increase an individual's sentence for AUUW from one classification to a higher level classification. 720 ILCS 5/24-1.6(d) (West 2008). Specifically, in subsection (d), the legislature increases the penalty for any violation of the statute from a Class 4 felony to a Class 2 felony if the person found guilty of committing the offense is a convicted felon. This sentencing provision does not create separate and distinct offenses of AUUW. Nor does making the sentence for a violation of the statute a Class 4 felony or a Class 2 felony transform the offense of AUUW into a different "form." See *People v. Van Schoyck*, 232 Ill. 2d 330, 337 (2009) ("Under the plain language of the statute, there is only one offense of driving under the influence. *** The enhancing factors in subsection (c) do not create a new offense, but rather serve only to enhance the punishment."); *People v. Robinson*, 232 Ill. 2d 98, 112 (2008) (involuntary manslaughter statute, providing that if the victim was a family or household member then the offense is a Class 2 felony rather than a Class 3 felony, sets forth a sentencing-enhancement element rather than creating a separate and distinct offense); *People v. Green*, 225 Ill. 2d 612, 619-20 (2007) (Illinois has a single offense called "robbery" that is either a Class 1 or a Class 2 felony, depending upon the nature of the victim); *People v. Smith*, 2012 IL App (1st) 102354, ¶ 110 (the plain, unambiguous language of section 8-4(a) sets forth the elements of the attempt offense; section 8-4(c)(1), under the heading "Sentence," states that the sentence for the offense of attempted first-degree murder is the same as the sentence range for a Class X felony); see also *People v. White*, 2011 IL 109616, ¶ 26 ("[F]irst degree murder is a single offense—there is no separate offense of 'armed murder' or 'enhanced murder.' "). The penalty enhancements in subsection (d) are not elements of the offense. They do not come into play until after the defendant is found guilty.

¶ 25        In *Aguilar*, we improperly placed limiting language on our holding that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute is facially unconstitutional. We now clarify that section 24-1.6(a)(1), (a)(3)(A) of the statute is facially unconstitutional, without limitation. Section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute provides that a person commits the offense of AUUW when he or she knowingly carries on or about his or her person or in any vehicle, any pistol, revolver, stun gun, taser or other firearm, when the firearm possessed is uncased, loaded, and immediately accessible at the time of the offense. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008). On its face, this statutory provision constitutes a flat ban on carrying ready-to-use guns outside the home. It "categorically prohibits the possession and use of an operable firearm for self-defense outside the home" (*In re Jordan G.*, 2015 IL 116834, ¶ 13), and, as such, it "amounts to a wholesale statutory ban on the exercise of a

personal right that is specifically named in and guaranteed by the United States Constitution, as construed by the United States Supreme Court." *Aguilar*, 2013 IL 112116, ¶ 21. It is precisely because the prohibition is not limited to a particular subset of persons, such as felons, that the statute, *as written*, is unconstitutional on its face. See *City of Los Angeles, California v. Patel*, 576 U.S. ___, 135 S. Ct. 2443 (2015).

¶ 26    The State, in support of the appellate court judgment in this case, contends that the offense of AUUW based on section 24-1.6(a)(1), (a)(3)(A), is not *facially* unconstitutional because it can be applied to felons without violating the second amendment. Quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002), and *United States v. Salerno*, 481 U.S. 739, 745 (1987), the State relies on the long-accepted principle that a statute is facially unconstitutional "only if 'no set of circumstances exists under which the [statute] would be valid.' " (Emphasis and internal quotation marks omitted.) The State's argument, however, is misplaced.

¶ 27    In *Patel*, 576 U.S. at ___, 135 S. Ct. at 2451, the United States Supreme Court explained the proper analysis for facial challenges:

"Under the most exacting standard the Court has prescribed for facial challenges, a plaintiff must establish that a 'law is unconstitutional in all of its applications.' *Washington State Grange* v. *Washington State Republican Party*, 552 U. S. 442, 449 (2008). But when assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct. For instance, in *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992), the Court struck down a provision of Pennsylvania's abortion law that required a woman to notify her husband before obtaining an abortion. Those defending the statute argued that facial relief was inappropriate because most women voluntarily notify their husbands about a planned abortion and for them the law would not impose an undue burden. The Court rejected this argument, explaining: The '[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.' *Id.*, at 894."

¶ 28    In *Heller*, 554 U.S. at 626-27, the United States Supreme Court stated:

"Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill ***."

¶ 29    It would appear, therefore, that the legislature *could* constitutionally prohibit felons from carrying readily accessible guns outside the home. See also *McDonald*, 561 U.S. at 786; *Moore*, 702 F.3d at 940. In fact, Illinois already has legislation which prohibits felons from possessing guns at all. See 720 ILCS 5/24-1.1 (West 2008) (unlawful use of a weapon by a felon). But that is not what the legislature proscribes in section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute. The offense, as enacted by the legislature, does not include as an element of the offense the fact that the offender has a prior felony conviction. An unconstitutional statute does not "become constitutional" simply because it is applied to a particular category of persons who could have been regulated, had the legislature seen fit to do so.

¶ 30    It would be improper for this court to condition the constitutionality of section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute on the State's proof of a defendant's felon status

when the legislature did not make that requirement an element of the offense. In essence, we would be "rewrit[ing] state law to conform it to constitutional requirements" and "substitut[ing] the judicial for the legislative department of the government." (Internal quotation marks omitted.) *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329-30 (2006). As the *Ayotte* court held, " '[I]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside' to announce to whom the statute may be applied." *Id.* at 330 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875)). See also *MacDonald v. Moose*, 710 F.3d 154, 166 (4th Cir. 2013) (anti-sodomy statute, which prohibited sodomy between two persons *without any qualification*, was facially unconstitutional).

¶ 31                                    CONCLUSION

¶ 32     For the foregoing reasons, we find the offense of AUUW, as set forth in section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, facially unconstitutional. As a result, the provision is not enforceable against anyone, including defendant. Accordingly, we vacate defendant's conviction and sentence for AUUW.

¶ 33     Appellate court judgment reversed.

¶ 34     CHIEF JUSTICE GARMAN, specially concurring:

¶ 35     I agree that section 24-1.6(a)(1), (a)(3)(A) of the aggravated unlawful use of a weapon (AUUW) statute is facially unconstitutional. However, I would hold that the statute as applied to defendant does not violate the second amendment and thus it cannot be facially unconstitutional on that basis. Instead, I would hold that the statute is facially unconstitutional because it does not require the State to plead and prove an essential element of the offense, and thus it violates due process.

¶ 36     The majority asserts that this court has already held that section 24-1.6(a)(1), (a)(3)(A) is facially unconstitutional. *Supra* ¶ 21. While this may have been the conclusion of the court before we modified our decision upon denial of rehearing in *People v. Aguilar*, that conclusion was abandoned when the modified opinion was issued. Therefore, this court has not previously held that the statutory section at issue is facially unconstitutional. In *People v. Aguilar*, we held that "on its face, the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution." 2013 IL 112116, ¶ 22. As the majority now explains, the sentencing categories (*e.g.*, Class 2, Class 4) should not have been used to differentiate multiple "forms" of the offense. *Supra* ¶ 22. There is only one form of the offense of AUUW. Sentencing factors that result in harsher punishment do not create separate offenses or different forms of an offense. *Id.* ¶ 24 (citing *People v. Van Schoyck*, 232 Ill. 2d 330, 337 (2009), and *People v. Robinson*, 232 Ill. 2d 98, 112 (2008)). Nevertheless, the limited holding reflects the fact that the court never considered whether the statutory section could constitutionally be enforced against those subject to sentences other than Class 4 sentences, *i.e.*, those who have been previously convicted of a felony. See *Aguilar*, 2013 IL 112116, ¶¶ 36-37 (Garman, C.J., dissenting). In *Aguilar*, the court focused on whether second amendment rights extend beyond the home. *Id.* ¶ 20 (majority opinion). The court did not consider the constitutionality of firearm restrictions

as applied to those with diminished second amendment rights. That issue is one of first impression before the court today.

¶ 37 In resolving that issue, the majority relies entirely on the federal Seventh Circuit Court of Appeal's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), to conclude that the statutory provision at issue is a "flat ban on carrying ready-to-use guns outside the home," that such bans "amount[ ] to a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution," and therefore that the statutory section is facially unconstitutional. *Supra* ¶ 25. I recognize that the provision restricts conduct protected by the second amendment, but I do not agree that a ban on certain conduct within the scope of the amendment is inherently facially unconstitutional.

¶ 38 The second amendment guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. A two-step inquiry is used to determine whether a statute violates this amendment. See *Wilson v. County of Cook*, 2012 IL 112026, ¶ 41. In the first step, we consider "whether the challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee." *Id.* "[I]f the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected," the court must determine whether the government has a sufficient justification for regulating the conduct. (Internal quotation marks omitted.) *Id*. ¶ 42.

¶ 39 In *People v. Aguilar*, we held that the second amendment right of individuals to carry weapons for self-defense extends beyond the home. *Aguilar*, 2013 IL 112116, ¶ 20; see *Moore*, 702 F.3d at 942. Therefore, the conduct proscribed by section 24-1.6(a)(1), (a)(3)(A) and by section 24-1.6(a)(2), (a)(3)(A) clearly falls within the scope of the second amendment guarantee. See *People v. Mosley*, 2015 IL 115872, ¶ 25 ("If, under *Aguilar*, a person cannot be barred from carrying an uncased, loaded and immediately accessible firearm while in a vehicle or concealed on or about his or her person based on the second amendment of the United States Constitution, it is logical that the same conduct should not be barred when the alleged offender similarly carries a firearm on a public way.").

¶ 40 The State contends that, although it implicates second amendment rights, the statutory section is not *facially* unconstitutional as it could be enforced against those who are not entitled to exercise second amendment rights. A statute is facially unconstitutional "only if ' "no set of circumstances exists under which the [statute] would be valid." ' " (Emphasis omitted.) *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002) (quoting *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." *Hill*, 202 Ill. 2d at 157; *People v. Davis*, 2014 IL 115595, ¶ 25. That the statutory section "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745. This court first adopted this standard from *Salerno* in 1994 and has consistently applied it in facial constitutionality challenges ever since. *In re C.E.*, 161 Ill. 2d at 210-11; see *In re M.A.*, 2015 IL 118049, ¶ 39; *Mosely*, 2015 IL 115872, ¶ 49; *In re Derrico G.*, 2014 IL 114463, ¶ 57; *Davis*, 2014 IL 115595, ¶ 25; *People v. Kitch*, 239 Ill. 2d 452, 466 (2011); *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20; *Davis v. Brown*, 221 Ill. 2d 435, 442 (2006); *In re M.T.*, 221 Ill. 2d 517, 537 (2006); *In re Rodney H.*, 223 Ill. 2d 510, 521 (2006); *People v. Garvin*, 219 Ill. 2d 104, 117 (2006); *People v. Molnar*, 222 Ill. 2d 495, 510-11 (2006); *In re Parentage of John M.*, 212 Ill. 2d 253, 269 (2004); *People v.*

*Einoder*, 209 Ill. 2d 443, 448 (2004); *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004); *People v. Greco*, 204 Ill. 2d 400, 406-07 (2003); *People v. Thurow*, 203 Ill. 2d 352, 367 (2003); *People v. Jackson*, 199 Ill. 2d 286, 301 (2002); *People v. Swift*, 202 Ill. 2d 378, 392 (2002); *In re R.C.*, 195 Ill. 2d 291, 297 (2001); *People v. Izzo*, 195 Ill. 2d 109, 112 (2001). "Because a finding that the statute is constitutional as applied to [the defendant] would necessarily compel a finding that the statute is constitutional on its face, [the court] *** first consider[s] whether the [statute] is unconstitutional as applied." *In re M.A.*, 2015 IL 118049, ¶ 41.

¶ 41      In *District of Columbia v. Heller*, the United States Supreme Court made clear that the right secured by the second amendment is held by "law-abiding, responsible citizens" and is not unlimited. 554 U.S 570, 635 (2008). Noting support from sources from "Blackstone through the 19th-century cases," the Court concluded that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Such prohibitions are "presumptively lawful." *Id.* at 627 n.26. The Court reiterated this point in *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 786 (2010). In *Aguilar*, we relied upon this language to conclude that regulations restricting a minor's ability to possess or use weapons do not implicate the second amendment. 2013 IL 112116, ¶¶ 26-28.

¶ 42      In light of *Heller* and *McDonald*, our appellate court has upheld as constitutional Illinois statutes governing the possession of weapons by felons on grounds that the second amendment is not implicated. *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 60; *People v. Rush*, 2014 IL App (1st) 123462, ¶ 19; *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 33. If a class of individuals can be restricted from possessing weapons, it follows that the class can also be restricted from using weapons. Federal and out-of-state courts have also concluded that regulations restricting felons' possession of firearms and ammunition (commonly referred to as felon dispossession statutes) are beyond the scope of the second amendment. *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (*per curiam*); *United States v. Barton*, 633 F.3d 168, 172 (3d Cir. 2011); *United States v. Vongxay*, 594 F.3d 1111, 1117 (9th Cir. 2010); *United States v. Rozier*, 598 F.3d 768, 771-72 (11th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003); *State v. Craig*, 826 N.W.2d 789, 790 (Minn. 2013); *Chardin v. Police Commissioner*, 989 N.E.2d 392, 402-03 (Mass. 2013); *Pohlabel v. State*, 268 P.3d 1264, 1267 (Nev. 2012).

¶ 43      Numerous courts have also upheld restrictions on the possession of weapons by minors, illegal aliens, individuals who unlawfully use or are addicted to controlled substances, individuals found to be mentally incapacitated, individuals subject to orders of protection, and individuals who have been convicted of a misdemeanor crime of domestic violence. *Aguilar*, 2013 IL 112116, ¶ 27 (upholding the constitutionality of section 24-3.1(a)(1) which restricts the possession of weapons by minors); *United States v. Boffil-Rivera*, No. 08-20437-CR, 2008 WL 8853354, at *8 (S.D. Fla. Aug. 12, 2008) (upholding the constitutionality of section 922(g)(5) of Title 18 of the United States Code, which restricts the possession of weapons by "illegal and unlawful alien[s]"); *United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010) (upholding constitutionality of section 922(g)(3), which restricts the possession of weapons by those who unlawfully use or are addicted to a controlled substance); *United States v. Roy*, 742 F. Supp. 2d 150, 152 (D. Me. 2010) (upholding the constitutionality of section 933(g)(4) which

restricts the possession of weapons by those found to be mentally incapacitated); *United States v. Luedtke*, 589 F. Supp. 2d 1018, 1023 (E.D. Wis. 2008) (upholding the constitutionality of section 922(g)(8) which restricts the possession of weapons by those subject to an order of protection); *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) (upholding the constitutionality of section 922(g)(9) which restricts the possession of weapons by those convicted of a misdemeanor crime of domestic violence). Similarly, I conclude that the AUUW statute as applied to someone without full second amendment rights is not unconstitutional based on a violation of the second amendment. The majority fails to explain how a statute can violate the second amendment rights of an individual who is not entitled to exercise second amendment rights.

¶ 44　　The majority, in reaching its facial unconstitutionality conclusion, strays from the "no set of circumstances" rule set forth in *Salerno* and relies on the United States Supreme Court's recent discussion in *City of Los Angeles, California v. Patel* regarding facial versus as-applied constitutionality challenges. 576 U.S. ___, 135 S. Ct. 2443. In *Patel*, a group of motel operators challenged the constitutionality of a provision of the Los Angeles Municipal Code that required the motel operators to maintain records of information about their guests and provide these records to the police on demand. *Id.* at ___, 135 S. Ct. at 2447. The motel operators asserted that the provision was facially unconstitutional based on the fourth amendment. *Id.* at ___, 135 S. Ct. at 2448. The City of Los Angeles responded that the provision was not facially unconstitutional, because its application would not be unconstitutional in situations "where police are responding to an emergency, where the subject of the search consents to the intrusion, [or] where the police are acting under a court-ordered warrant." *Id.* at ___, 135 S. Ct. at 2450-51. In addressing the nature of a facial challenge, the Court explained: "Under the most exacting standard the Court has prescribed for facial challenges, a plaintiff must establish that a 'law is unconstitutional in all of its applications.' [Citation.] But when assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct." *Id.* at ___, 135 S. Ct. at 2451 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). "[T]he proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *Id.* at ___, 135 S. Ct. at 2451; see *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 894 (1992).

¶ 45　　Courts have long recognized the power of the police to conduct a warrantless search in the event of an emergency, under exigent circumstances, or if the subject consents. *Katz v. United States*, 389 U.S. 347, 357 (1967); *People v. Pitman*, 211 Ill. 2d 502, 523 (2004); *People v. Foskey*, 136 Ill. 2d 66, 74 (1990). Thus, the code provision in *Patel* was not necessary to authorize the police to conduct a search under any of these circumstances. *Patel*, 576 U.S at ___, 135 S. Ct. at 2451. These circumstances were beyond the scope of the provision, and thus the Court did not consider them when deciding whether the code provision was "unconstitutional in all of its applications." (Internal quotation marks omitted.) *Id.* at ___, 135 S. Ct. at 2451. Similarly, in *Planned Parenthood of Southeastern Pennsylvania*, the government argued that the law requiring married women to notify their husbands prior to obtaining an abortion was not facially unconstitutional because it could be enforced against those who voluntarily comply without unduly burdening their privacy rights. 505 U.S. at 894; see *Patel*, 576 U.S. at ___, 135 S. Ct. at 2451 (discussing *Planned Parenthood of Southeastern Pennsylvania*). The Court explained that the law is irrelevant to those who voluntarily provide

notice. *Planned Parenthood of Southeastern Pennsylvania*, 505 U.S. at 894. "The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* Therefore, the applicability of the law to those who voluntarily comply is not considered when determining whether the law was facially unconstitutional.

¶ 46     The majority asserts that the court should not consider the application of section 24-1.6(a)(1), (a)(3)(A) to felons when determining whether the section is facially constitutional. By citing *Patel* and *Planned Parenthood of Southeastern Pennsylvania* in support of this assertion, the majority implies that the statute at issue is irrelevant to felons in the same way that the *Patel* law was irrelevant to those who consented to a search or in circumstances where the police had a warrant. This is incorrect. The AUUW section at issue here applies to all individuals; therefore, felons are part of "the group for whom the law is a restriction." *Planned Parenthood of Southeastern Pennsylvania*, 505 U.S. at 894. There is no established doctrine prohibiting felons from carrying weapons in public comparable to the fourth amendment exceptions discussed in *Patel*. The constitution permits the government to restrict the right to keep and bear arms for individuals with prior felonies and the Illinois legislature chose to do so through the AUUW statute. Therefore, the law at issue "actually *** prohibits" the conduct in this case, and the court should consider the application of the law to felons when determining whether the law is facially unconstitutional. *Patel*, 576 U.S. at ___, 135 S. Ct. at 2451. Because the law as applied to defendant does not violate any right protected by the second amendment, the law cannot be facially unconstitutional based on the second amendment.

¶ 47     The majority would require that the statute specifically state that it applies to felons, or to those with diminished second amendment rights, in order to comply with the second amendment. This is an unprecedented expansion of the doctrine of overbreadth. The overbreadth doctrine allows a challenger to prove a law is facially unconstitutional even if it is valid in some circumstances if he can show that " 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange*, 552 U.S. at 449 n.6). This is exactly the logic employed by the majority today—section 24-1.6(a)(1), (a)(3)(A) is unconstitutional as applied to most of society (those entitled to exercise full second amendment rights) and thus the law is facially unconstitutional.

¶ 48     However, neither this court nor the Supreme Court has ever applied the doctrine of overbreadth outside the context of a first amendment challenge. See *Salerno*, 481 U.S. at 745 ("The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); see also *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007) (recognizing that the overbreadth doctrine does not apply outside the context of the first amendment); *People v. Clark*, 2014 IL 115776, ¶ 11 (same); *In re Lakisha M.*, 227 Ill. 2d 259, 276 (2008) (same); *Davis v. Brown*, 221 Ill. 2d 435, 442-43 (2006) (same); *People v. Garvin*, 219 Ill. 2d 104, 125 (2006) (same); *Einoder*, 209 Ill. 2d at 448 (same); *People v. Greco*, 204 Ill. 2d 400, 407 (2003) (same); *People v. Izzo*, 195 Ill. 2d 109, 112 (2001) (same); *In re R.C.*, 195 Ill. 2d 291, 297 (2001) (same); *People v. Terrell*, 132 Ill. 2d 178, 212 (1989) (same); *People v. Haywood*, 118 Ill. 2d 263, 275 (1987) (same); *People v. Ryan*, 117 Ill. 2d 28, 33 (1987) (same); *People v. Garrison*, 82 Ill. 2d 444, 449-50 (1980) (same).

¶ 49    There is no reason to now expand the use of this doctrine and apply it in the context of a second amendment challenge. Overbroad statutes are considered facially unconstitutional in the context of the first amendment because of the "chilling effect" such laws have on free speech. See *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977) (recognizing first amendment overbreadth challenges as a "departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court" and noting that this exception is based on the idea that an "overbroad statute might serve to chill protected speech"); *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973) (noting that "[i]t has long been recognized that the First Amendment needs breathing space"); *Clark*, 2014 IL 115776, ¶ 11 ("The United States Supreme Court has provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech, especially when the statute imposes criminal sanctions."); *People v. Bailey*, 167 Ill. 2d 210, 226 (1995) ("The doctrine of overbreadth is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of the freedom."). There is no similar concern that the AUUW statute will have an inappropriate chilling effect on those with full second amendment rights who wish to carry their firearms in public.

¶ 50    Furthermore, by applying the doctrine in this case, the majority nearly eliminates all as-applied challenges in the future. After today, any defendant can challenge a law as facially unconstitutional, even if the law is constitutional as applied to him, so long as the defendant can identify someone to whom the application of the law would be unconstitutional. This is directly contrary to the presumption that statutes are constitutional (*Aguilar*, 2013 IL 112116, ¶ 15) and to the Court's preference for as-applied challenges. *Washington State Grange*, 552 U.S. at 450 ("Facial challenges are disfavored for several reasons."). Facial challenges, as opposed to as-applied challenges, "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records' " and "run contrary to the fundamental principle of judicial restraint." *Id.* (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). "[C]ourts should neither ' "anticipate a question of constitutional law in advance of the necessity of deciding it" ' nor ' "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." ' " *Id.* at 450-51 (quoting *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring, joined by Stone, Roberts and Cardozo, JJ.), quoting *Liverpool, New York & Philadelphia*, *Steamship Co. v. Commissioners of Emigration*, 113 U.S. 33, 39 (1885)). "Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. Recognizing that a " 'ruling of unconstitutionality frustrates the intent of the elected representatives of the people,' " the Court in *Ayotte v. Planned Parenthood of Northern New England* explained that it "prefer[s] *** to enjoin only the unconstitutional applications of a statute while leaving other applications in force *** or to sever its problematic portions while leaving the remainder intact" where possible. *Ayotte*, 546 U.S. at 328-29 (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984), and citing *United States v. Raines*, 362 U.S. 17, 20-22 (1960), and *United States v. Booker*, 543 U.S. 220, 227-29 (2005)).

¶ 51    For these reasons, I conclude that the statutory section is not facially unconstitutional based on the second amendment. However, the section cannot be enforced even against those with

- 13 -

diminished second amendment rights without violating due process. Under the due process clause of the United States Constitution, the State must prove every element of a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The State must also prove any fact, other than a prior conviction, that subjects the defendant to a harsher penalty. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Because a defendant cannot constitutionally be convicted of AUUW under subsection (a)(1), (a)(3)(A) or (a)(2), (a)(3)(A) unless he or she lacks second amendment rights, the lack of such rights is a fact that the State must prove beyond a reasonable doubt at trial. As defendant argued, the statute does not include this requirement. I agree with the majority that the court cannot impose this requirement without improperly imposing on the authority of the legislature. *Supra* ¶ 30; see *Ayotte*, 546 U.S. at 330 (" '[I]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside' to announce to whom the statute may be applied." (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875))). Therefore, I would hold that the statute is facially unconstitutional based on this violation of due process.

¶ 52    Because I conclude that the statute is facially unconstitutional, though on different grounds than the majority, I concur with the majority's judgment that defendant's conviction and sentence must be vacated.

¶ 53    JUSTICE THOMAS joins in this special concurrence.