2023 IL App (1st) 22-0579-U
Order filed: April 20, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0579

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 13639 |
| | ) | |
| EMMANUEL WARE, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's denial of defendant's motion for leave to file a second successive postconviction petition for failure to establish prejudice. The sentencing court gave insignificant weight to two prior AUUW convictions that were later vacated and greater sentences did not result.

¶ 2    Defendant-appellant, Emmanuel Ware, appeals from the denial of his motion for leave to file a second successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 122-1 *et seq.* (West 2020)). On appeal, defendant contends that he established cause and prejudice where the trial court, in sentencing defendant, relied on two convictions for aggravated unlawful use of a weapon (AUUW) that were later vacated as unconstitutional. We affirm.

¶ 3    In defendant's direct appeal, we set forth a detailed background of this case. See *People v. Ware*, 2014 IL App (1st) 120485. We present only those facts which are relevant to this appeal including a detailed recitation of the sentencing hearing.

¶ 4    Defendant and codefendant, Anthony Johnson, were tried by a jury on various charges including six counts of armed robbery with a firearm. At trial, the evidence established that, on July 10, 2009, at around 7 p.m., defendant and codefendant, armed with guns, entered a crowded barber and beauty salon (salon). Defendant pointed his gun at a customer and ordered everyone else present to get down on the floor and give up their belongings. Complying with defendant's commands, codefendant collected property and money from six individuals in the salon. During the incident, a woman with a young boy approached the salon. Defendant pulled the boy into the salon, separating the child from the woman. The jurors viewed a surveillance video depicting the incident. They found defendant guilty on the six counts of armed robbery with a firearm.

¶ 5    Defendant's convictions for armed robbery with a firearm in violation of section 18-2(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2(a)(1) (West 2008)) and as a Class X offense, carried a sentencing range of 6 to 30 years' imprisonment. *Id.* § 18-2(b); 730 ILCS 5/5-8-1(a)(3) (West 2012). Defendant was also subject to a mandatory firearm enhancement of 15 years' imprisonment. 720 ILCS 5/18-2(b) (West 2012). A Class X offense is subject to an enhancement if a defendant has a prior Class X conviction. See 730 ILCS 5/5-5-3.2(b)(1) (West 2012). The trial court has discretion to impose consecutive sentences where there is a need "to protect the public from further criminal conduct." *Id.* § 5-8-4(c)(1).

¶ 6    After denying defendant's motion for a new trial, the trial court held a sentencing hearing. The evidence as to defendant's criminal history, including the presentence investigation report (PSI), showed that he had two juvenile convictions (possession of controlled substances and

trespass to vehicle) and four adult convictions. The adult convictions were for AUUW in 2003, AUUW in 2004, aggravated kidnapping with a firearm in 2006, and possession of cannabis in 2009. Defendant received a sentence of 78 months on the aggravated kidnapping conviction and was on parole when he committed the six armed robberies.

¶ 7    The State presented evidence as to the circumstances surrounding defendant's aggravated kidnapping conviction through the testimony of the investigating/arresting police officers. On September 3, 2005, defendant was one of three individuals, two armed with handguns, who forced the victim out of his automobile. The offenders took the victim's jewelry and then forced him into another vehicle. Defendant was in the back seat with the victim while another offender drove this vehicle away. The third offender fled with the victim's automobile. The police later stopped the vehicle occupied by defendant and the victim for erratic driving. The police discovered defendant and the victim struggling over defendant's handgun in the back seat. After the gun discharged, defendant stuck his arm through the car window and dropped the gun onto the sidewalk.

¶ 8    In discussing the armed robbery convictions, the State stressed that the six victims testified at trial to being "terrorized" from the moment defendant and co-defendant entered the salon. The salon was crowded with both adults and children. Defendant "dragged" a young boy into the salon and threw him to the ground. The witnesses testified that defendant "was the one calling all the shots" during the armed robberies. The State asserted that defendant hides behind a gun and victimizes people and takes their belongings. The State also argued that defendant had "two gun convictions and then he uses the gun *** to kidnap somebody and take their car." The State urged the court to impose a sentence "much higher than the minimum" as he had committed acts of terror against the victims in the salon.

¶ 9    In mitigation, defense counsel argued that defendant was young and "[h]opefully he'll learn something through this trial," and defendant's mother and his sister had been in court every day. Defense counsel said that "thankfully" no one was injured during the armed robberies. Defendant chose not to speak in allocution.

¶ 10    Before announcing defendant's sentence, the trial court stated that it would consider the statutory factors in aggravation and mitigation (730 ILCS 5/5-5-3.1, 3.2 (West 2012)), the arguments, the testimony, and the PSI. The court began by addressing each statutory factor in mitigation.

¶ 11    First, the court considered whether defendant's conduct neither caused nor threatened serious physical harm and found:

"short of murder I can't think of anything else that could have been a more horrific set of circumstances to go through than what all of the victims endured in this case. People are in after work. There was many, many people in there, as evidenced on the videotape and certainly the videotape was chilling, chilling to watch from the moment it started as you saw [defendant and codefendant] walking down the hallway about to enter until they left and the case was over, chilling how it showed what each and every one of these folks went through at the [salon]."

¶ 12    In considering whether defendant contemplated that his criminal conduct would cause or threaten serious physical harm, the court recognized that he and codefendant brought guns into a public place "to hold all of those individuals, including children, hostage, laid them down on the ground, and had them give their money, their purses, and their jewelry into the Santa Claus sack the codefendant was carrying." The court concluded that defendant "very much contemplated that his actions were going to cause or possibly cause serious physical harm."

¶ 13    In finding that defendant's conduct was not induced or facilitated by somebody other than him, the court found that defendant was the "ringleader," "the guy at the door, he's ordering around his codefendant to make sure that the codefendant doesn't miss anything. He's the guy that tells everybody you know what's up, you know why we're here. Get down on the ground. So it's the defendant who out of the two, both equally guilty, both with guns but the defendant out of the two of them was more of the leader."

¶ 14    When reviewing whether defendant's criminal conduct was the result of circumstances unlikely to recur, the court stated that "defendant has shown time and time and time again that not only does he commit crimes, but all of his crimes are crimes with guns and they've escalated up to the current felony." The court believed defendant's conduct would "very likely" reoccur "just like it has four separate times." The court went on to find "significant" that defendant was on parole for the aggravated kidnapping conviction when he committed the armed robberies.

¶ 15    As to the other statutory factors in mitigation, the court found there was no evidence to show that defendant was acting under a strong provocation, there were substantial grounds tending to justify or excuse defendant's conduct, defendant or the victims were compensated, defendant had led a law-abiding life for a substantial period of time, defendant had a medical condition, or defendant would be unlikely to commit these crimes again. The court did note that defendant's family would "have a hardship" upon his imprisonment but did not indicate that the hardship would be "excessive" as set forth in the statute. 730 ILCS 5/5-5-3.1(a)(11) (West 2012).

¶ 16    The court then considered the statutory aggravation factors and again found that defendant's conduct during the armed robberies caused or threatened serious physical harm.

¶ 17    In reviewing defendant's criminal history, the court stated that defendant had a juvenile background and two convictions for AUUW. The court, however, discussed in detail the

aggravated kidnapping conviction and found those facts also to be "chilling," stating: "There's this guy who is abducted off the street, his jewelry taken, he's forced into another car, he's in the back seat with the defendant who has a gun ***. In a one in a million scenario there just happens to be a uniformed policeman behind him observing *** a car swerving around in the day so he goes to pull it over and lo and behold there's a big struggle in the back seat between the defendant *** and the victim ** and the weapon discharges and thankfully doesn't kill anyone ***." The court emphasized that defendant was sentenced on the aggravated kidnapping conviction to "six months over the minimum" and "after barely getting out of the penitentiary he commits this offense."

¶ 18    The trial court then examined the serious nature of defendant's conduct during the armed robberies, a discussion which covers over four pages of the transcript. The court described the salon as "bustling" and crowded with adults and children. The court also described each of the six armed robbery victims and the "nightmare" of their ordeals. On entering the salon, defendant immediately pulled a gun "and [put] it to the head" of a customer in the first chair and ordered everyone else to get down on the floor. Defendant encouraged "an unsuspecting mom" with her little boy to enter the salon. Defendant dragged the boy into the salon, making the boy "yet another victim." Defendant directed the co-defendant to take "every drop of cash, every drop of jewelry that any of these folks had as they're laying on the floor." The court found that the offenses were "were well-planned out, not a spur of the moment thing whatsoever" and added that defendant was armed with a gun "for time number 4."

¶ 19    The court emphasized defendant faced sentencing for six separate verdicts of guilty for six separate victims on the felony offense of armed robbery with a potential minimum sentence of 21 years on each count "if [defendant] didn't have one misdemeanor in his background." Here the trial court said defendant's "history of guns, his history of violence is very predictive of what he

is all about. In this particular case I've considered, as I said, all of the facts very, very carefully. The defendant in my view is eligible for and deserves nothing other than an extended term sentence."

¶ 20 Having found that defendant was eligible for an extended term based on the aggravated kidnapping conviction, the trial court sentenced him to six terms of 50 years, including the 15-year mandatory firearm enhancement and a five-year extended term. The court stated that consecutive sentences on each of the armed robbery counts would be possible based on a finding that it was necessary to protect the public from the actions of defendant but in light of the extended sentences, concurrent sentences would be imposed.

¶ 21 The trial court denied defense counsel's oral motion and written motion to reconsider defendant's sentences.

¶ 22 On January 26, 2012, defendant filed a direct appeal to this court and as pertinent here challenged his sentences and sought a new sentencing hearing on two grounds. First, defendant argued the trial court erred in finding that he was subject to extended term sentences because he did not have a prior Class X felony conviction. *Ware*, 2014 IL App (1st) 120485, ¶ 28. According to the records of the Illinois Department of Corrections (IDOC), the aggravated kidnapping conviction was a Class 2 and not a Class X felony. The State agreed and we affirmed defendant's convictions but held that he was not extended-term eligible. *Id.* ¶¶ 28-29.

¶ 23 However, we rejected defendant's request to remand for resentencing on this basis as it was clear from the record that the trial court intended to impose the maximum available sentences. *Id.* ¶ 30-32. Pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), we reduced defendant's sentences to the maximum non-extended term sentences of 45 years, which included the mandatory 15-year enhancement. *Ware*, 2014 IL App (1st) 120485, ¶ 32.

¶ 24 Second, defendant argued his case should be remanded for resentencing so the trial court could determine whether his previous AUUW convictions were void as unconstitutional under *People v. Aguilar*, 2013 IL 112116, which was decided during the pendency of his direct appeal. *Ware*, 2014 IL App (1st) 120485, ¶ 33. In *Aguilar*, as clarified in *People v Burns*, 2015 IL 117387, our supreme court found section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute was unconstitutional on its face in violation of the Second Amendment to the United States Constitution (U.S. Const., amend. II). In *Ware*, the record did not include evidence as to whether defendant's convictions were based on the facially unconstitutional statutory provisions. 2014 IL App (1st) 120485, ¶ 33-34. We concluded that we lacked appellate jurisdiction to review whether the prior convictions were void under *Aguilar*. *Id.* Further, we found that even if defendant's prior AUUW convictions were void, we would not be required to remand for resentencing where the convictions had an insignificant impact on the sentencing. *Id.* ¶ 35. We reasoned:

"The trial court carefully considered defendant's sentences in light of all matters in aggravation and mitigation. The two prior convictions for AUUW certainly were mentioned as part of defendant's criminal background. Having reviewed the transcript of proceedings from the sentencing hearing, we conclude the trial court placed little emphasis on the prior AUUW convictions. The trial court was most concerned with the circumstances surrounding the six armed robberies at hand and the wanton nature of defendant's prior kidnapping conviction involving a firearm, which has not been challenged as void." *Id.* ¶ 36 (citing *People v. Burge*, 254 Ill.App.3d 85, 91, 193 Ill. Dec. 310, 626 N.E.2d 343 (1993) ("When the weight placed on an improperly considered aggravating factor is so insignificant that it did not lead to a greater sentence, a remand for resentencing is not required.")). " *Id.* ¶ 36.

¶ 25    On January 25, 2015, defendant filed a *pro se* initial postconviction petition alleging various claims of trial court error and ineffectiveness of counsel which were unrelated to his sentencing. The trial court summarily dismissed the petition, and we affirmed that decision. *People v. Ware*, 2018 IL App (1st) 152811-U.

¶ 26    In 2017, pursuant to defendant's section 2-1401 petition, the trial court vacated his two AUUW convictions based on *Aguilar*, 2013 IL 112116.

¶ 27    Subsequently, our Supreme Court, held that because a conviction under the provisions found unconstitutional in *Aguilar* is void *ab initio*, "the conviction must be treated by the courts as if it did not exist, and it cannot be used for any purpose under any circumstances." *In re N.G.*, 2018 IL 121939, ¶ 36. The supreme court made clear that "if the constitutional infirmity is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*." *Id.* ¶ 57.

¶ 28    In 2021, the trial court granted defendant's motion to correct the *mittimus* to reflect our order reducing defendant's sentence to 45 years' imprisonment as to each count of armed robbery.

¶ 29    On June 23, 2021, defendant filed a motion for leave to file a successive postconviction petition which alleged that his "50-year sentence" for armed robbery was unconstitutional as applied to him because it was extended based on the now vacated convictions for AUUW. On August 27, 2021, the trial court denied defendant leave to file the successive postconviction petition finding that defendant had raised a challenge to his extended term on direct appeal and therefore *res judicata* applied.

¶ 30    Defendant, on September 23, 2021, filed a motion for leave to file a second successive postconviction petition contending that the trial court, in sentencing defendant, improperly relied on defendant's prior unconstitutional convictions for AUUW in aggravation. Citing *People v*

*Bourke*, 96 Ill. 2d 327 (1983), the trial court found that its consideration of the AUUW convictions "was slight in comparison to the other aggravating factors considered" and denied defendant's motion as he did not show prejudice. Defendant appeals.

¶ 31    Defendant argues that the trial court erred in denying him leave to file his second successive postconviction petition with a claim that the trial court erred in relying on his void AUUW convictions in aggravation as he had established cause and prejudice. As to cause, defendant argued that he could not have raised this claim until the AUUW convictions were vacated as void. Defendant maintains that he showed prejudice as the trial court gave "more than [a] little" weight to the AUUW convictions and that in any event, the case law now requires resentencing if there was any consideration given to a void conviction.

¶ 32    The Act provides a method where defendants may collaterally attack their convictions or sentences on constitutional grounds. *People v. Tate*, 2012 IL 112214, ¶ 8; 725 ILCS 5/122-1 *et seq.* (West 2020). The Act generally contemplates the filing of only one postconviction petition. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009); 725 ILCS 5/122-3 (West 2020). To file a successive postconviction petition, a defendant must first obtain leave of court. 725 ILCS 5/122-1(f) (West 2020). "Only when fundamental fairness so requires will the strict application of this statutory bar be relaxed." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). The bar against successive proceedings is relaxed where the defendant can establish (1) cause and prejudice for failing to raise the claim earlier, or (2) actual innocence. 725 ILCS 5/122-1(f) (West 2020); *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23. Here, as discussed, defendant asserts that he has satisfied the cause-and-prejudice test.

¶ 33    A defendant need only set out a *prima facie* case at the leave-to-file stage. *People v. Bailey*, 2017 IL 121450, ¶ 24. "It is the defendant's burden to demonstrate both cause and prejudice for

each claim raised in his successive petition." *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). Cause constitutes an objective factor that impeded the defendant's ability to raise a specific claim during his initial postconviction proceedings, and prejudice exists when the alleged error so infected the trial that the resulting sentence violated due process. *Bailey*, 2017 IL 121450, ¶ 15; 725 ILCS 5/122-1(f) (West 2020).

¶ 34    "[A] defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirements if the motion adequately alleges facts demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 33. Leave to file a successive postconviction petition "should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." (Internal citations omitted.) *Id.* We review a trial court's ruling on a motion for leave to file a successive postconviction petition *de novo. Id.* ¶ 13.

¶ 35    We first review defendant's claim that he adequately alleged prejudice where the trial court considered his AUUW convictions that were later declared unconstitutional.

¶ 36    The sentencing decision of a trial court is given great deference (*People v. Alexander*, 239 Ill. 2d 205, 212 (2010)) but where the court relies upon improper sentencing factors, the matter may be remanded for resentencing (*People v. Hearring*, 2022 IL App (1st) 192064, ¶ 34). However, not every sentencing error requires a new sentencing hearing; we will affirm the sentence if the weight placed on the improperly considered aggravating factor was so insignificant that it did not result in a greater sentence. *Bourke*, 96 Ill 2d at 332. "Where, [despite a sentencing error,] a defendant 'would have received the same sentence,' remandment is not required." *People v. Chromik*, 408 Ill App 3d 1028, 1050 (2011) (quoting *People v. Bohlander*, 225 Ill. App. 3d

1055, 1058 (1992)). In considering whether reversible error occurred, "the reviewing court should not focus on a few words or statements of the trial court," but should make its decision "by considering the entire record as a whole." *People v. Ward*, 113 Ill. 2d 516, 526, 27 (1986).

¶ 37 In denying defendant's motion to file a second successive postconviction petition, the trial court found that defendant had not shown prejudice as the AUUW convictions were given "slight" consideration at sentencing. When the entire record is viewed as a whole, we agree that the weight given the AUUW was insubstantial and did not result in a greater sentence.

¶ 38 The trial court in framing its sentences carefully and in great detail considered the statutory factors in mitigation and aggravation. The court recognized that defendant's family would suffer hardship upon his incarceration, but otherwise found that not one statutory factor in mitigation applied, a finding consistent with the evidence as a whole. And defendant argued little in mitigation, only that defendant was young (age 23) at the time of the crime, "hopefully" learned important lessons from the trial, "thankfully" no one was hurt, and members of his family had been in court throughout the case.

¶ 39 In examining the aggravation factors, the trial court did refer to the AUUW convictions when speaking about defendant's history of gun violations and again when finding defendant lacked a potential for rehabilitation. The court however relied most heavily on the aggravated kidnapping conviction and the chilling circumstances of that crime as the most significant part of defendant's prior criminal history. Additionally, the court placed great weight on the fact that defendant committed the armed robberies while on parole for the aggravated kidnapping conviction in concluding that his criminal conduct was likely to recur.

¶ 40 It is clear that defendant's heinous conduct during the armed robberies was the central reason for the court's sentences. The trial court found that defendant and codefendant carefully

12

planned the armed robberies, chose a time when the salon would be crowded, and were armed with guns. The court declared defendant as the ringleader who held a gun to one customer's head while directing codefendant to take every item of jewelry and cash from the victims. Defendant dragged a child into the salon thereby putting the child in danger. The court had concerns that defendant went from committing a vicious kidnapping of one victim to robbing six victims and holding many others hostage while again armed with a firearm and "barely out of the penitentiary."

¶ 41    We also conclude that based on the record as a whole, the references to the AUUW convictions did not result in greater sentences. Defendant's initial sentence on each of the six armed robbery counts was 30 years plus the mandatory 15-year firearm enhancement and the erroneous 5-year extended term. The trial court in framing the sentences stated that sentences near the minimum of the relevant sentencing scale for armed robbery would not be appropriate. The trial court reasoned that defendant had received a sentence on the aggravated kidnapping of just six months above the minimum and went on to commit these six armed robberies while on parole from that sentence. After finding extended sentences appropriate, the trial court chose not to consider consecutive sentences on the six armed robbery convictions and, instead, made the six sentences concurrent. We find the trial court would not have entered lesser sentences for the armed robbery convictions had there been no reference to the void AUUW convictions.

¶ 42    Defendant asserts that after *In re N.G.*, 2018 IL 121939, courts of review do not apply the standard set out in *Bourke* in determining whether a defendant must be resentenced where a trial court considered a void conviction. Citing *Hearring*, 2022 IL App (1st) 192064, defendant argues that a new sentencing is required if a void conviction was given "any" consideration or weight. In *Hearring*, the State argued in aggravation at sentencing that the defendant had nine felony convictions, but the defendant actually had only seven prior felony convictions. *Id.* ¶¶ 32-33. Two

13

of the defendant's prior convictions were for AUUW. *Id.* ¶ 32. The court's sentencing decision covered only "four short paragraphs" in the transcript of the proceedings and included the court's statement that the defendant had nine felony convictions. *Id.* ¶ 33. On direct appeal, the appellate court vacated the two AUUW convictions as void under *Aguilar* and then considered whether the matter should be remanded for resentencing. *Id.* ¶ 26. The appellate court found that from the record it "[had] no way to know for certain exactly how much the two void convictions and the resulting erroneous number of convictions affected the trial court's sentencing decision." *Id.* ¶34. Because the trial court in sentencing the defendant repeated the State's misrepresentation as to the number of felony convictions and two of those felony convictions were vacated as void on direct appeal, the appellate court found that the defendant should be resentenced. *Id.*

¶ 43     We disagree that the decision in *Hearring* holds that resentencing is necessary if a void conviction was given *any* weight or consideration during the sentencing. The *Hearring* court held it was unsure from the record *what* effect both improper factors—two void convictions and the misconception as to the number of prior felony convictions—had on the defendant's sentence. We also disagree that *Hearring* departs from *Bourke*. While our supreme court in *Bourke* held that resentencing is not required where an improper sentencing factor had insubstantial weight and did not result in a greater sentence, it also held that "where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing." *Bourke*, 96 Ill 2d at 332.

¶ 44     This case is unlike *Hearring*. From the record as a whole and the trial court's lengthy discussion of the sentencing factors and the heinous circumstances of the aggravated kidnapping and six armed robberies, we are able to determine that the impact of the void AUUW convictions on defendant's sentencing was insignificant and did not result in greater sentences.

¶ 45    Because we affirm the denial of defendant's motion to file a successive postconviction for the reasons we have discussed, we need not reach the State's arguments that defendant did not show cause or defendant's claim was procedurally barred.

¶ 46    In conclusion, defendant has not sufficiently alleged prejudice from the mention of the two void AUUW convictions at sentencing; we affirm the denial of his motion for leave to file a second successive postconviction petition.

¶ 47    Affirmed.