NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230348-U

NO. 4-23-0348

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 4, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Knox County |
| MARLON BROWN, | ) | No. 08CF437 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Andrew J. Doyle, |
| | ) | Judge Presiding. |

_____

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Turner and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2    Defendant, Marlon Brown, appeals from the trial court's denial of his motion for

leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-

1 *et seq*. (West 2022)). On appeal, the Office of the State Appellate Defender (OSAD) was

appointed to represent him. OSAD now moves to withdraw on the ground no issue of arguable

merit can be raised on appeal. Despite being given the opportunity, defendant did not file a

response to the motion to withdraw. After reviewing the record, we grant counsel's motion and

affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                 A. Pretrial Proceedings

¶ 5    According to a "detention order," defendant was arrested for murder at approximately 3 a.m. on August 23, 2008, and, that same day, the trial court found probable cause existed to detain him. The detention order also set bail at $1 million. The order has a judge's signature below a line that states it was entered on August 23, 2008, at 8:57 a.m. The order bears an August 25, 2008, file stamp.

¶ 6    On August 25, 2008, the State filed an information charging defendant with first degree murder under three theories (720 ILCS 5/9-1(a)(1)-(2) (West 2008)) and two lesser counts. The charges arose from the August 23, 2008, shooting death of Deriek W. Lawless. Also on August 25, 2008, defendant appeared before the trial court. The court informed defendant of the charges and appointed the public defender to represent him.

¶ 7    Defendant appeared with counsel on August 29, 2008. At the State's request, the trial court set a preliminary hearing date of September 22, 2008. The State calculated that this would be the thirtieth day after defendant's August 23, 2008, arrest. On September 5, 2008, the State moved to advance the date to September 15. Defendant objected because he was trying to retain counsel. Counsel for defendant represented (1) he had informed defendant a September 22 hearing would be a day later than the law required and (2) defendant did not object to that delay. Defendant signed a written waiver to his right to have a preliminary hearing within 30 days of his arrest.

¶ 8    On March 16, 2009, the State filed a superseding information. Defendant was charged with three counts of first degree murder, each based on a different theory of culpability. It also charged him with one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)) based on his discharge of a handgun toward Lawless and two counts of unlawful possession of a firearm

by a felon (*id.* § 24-1.1(a)), based on a prior felony conviction and his possession of the handgun and ammunition in a magazine.

¶ 9                                     B. The Trial

¶ 10          At defendant's jury trial, the State presented testimony tending to show that defendant shot Lawless during an altercation between Lawless and Major Lemon in the parking lot of a bar, Andrew's Lounge, in Galesburg, Illinois. According to the testimony of Solomon Thompson, as Lawless was striking Lemon, defendant told Lawless to get off Lemon. Thompson then saw defendant shoot Lawless in the face with a handgun. Lawless got up, stumbled away, and fell. Defendant stood over Lawless and fired several more shots into his torso. Kinlaw Hendrix's testimony corroborated Thompson's testimony.

¶ 11          Violette Hnilica, the forensic pathologist who autopsied Lawless's body, testified the entry wound from the shot to the head was at the back of the skull. An officer arriving at the scene heard someone say, "Marlo shot my homie." Defendant was known as "Marlo." Other evidence placed defendant's car at Andrew's Lounge at the relevant time. Officers searching defendant's house found a handgun matching witnesses' descriptions of the gun used to kill Lawless under a doghouse on the property. Defendant's fingerprint was on the magazine, and forensic evidence linked the gun to cartridge cases found at the scene of the killing and bullet fragments taken from Lawless's skull. The jury found defendant guilty of all counts. The trial court sentenced defendant to a term of 26 years' imprisonment for murder, to be served consecutively to two concurrent terms of 2 years' imprisonment for unlawful possession of a weapon by a felon.

¶ 12                                    C. The Direct Appeal

¶ 13          On direct appeal to the Third District, defendant argued: (1) the evidence was insufficient to support any of the convictions and (2) the trial court committed plain error by not

asking the jurors if they understood and accepted the four principles, including the presumption of innocence, set out in Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). *People v. Brown*, 2011 IL App (3d) 090572-UB, ¶ 1. The appellate court held the evidence was sufficient because the evidence favoring the State was strong and the contradiction between the eyewitness testimony that defendant shot Lawless in the face and the medical evidence showing Lawless was shot in "the back of the head" did not weaken the totality of the evidence to the point of insufficiency. *Brown*, 2011 IL App (3d) 090572-UB, ¶¶ 21-23. Further, because the evidence was not closely balanced, the trial court's failure to question the jurors concerning Rule 431(b) principles was not first-prong plain error. *Brown*, 2011 IL App (3d) 090572-UB, ¶¶ 29-31. Finally, under the holding in *People v. Thompson*, 238 Ill. 2d 598, 613-14 939 N.E. 2d 403 (2010), the trial court's failure was not second-prong plain error (*i.e.*, error akin to structural error). *Brown*, 2011 IL App (3d) 090572-UB, ¶¶ 33-34.

¶ 14                      D. Defendant's Prior Postconviction Filings

¶ 15                      1. *Defendant's Original Postconviction Petition*

¶ 16          In December 2012, defendant filed a *pro se* petition under the Act. Among the issues the petition raised were the ineffectiveness of appellate counsel for failing to argue defense counsel was ineffective for failing to challenge what defendant claimed was the State's knowing use of perjured testimony. The trial court summarily dismissed this petition in February 2013. Defendant appealed. In August 2014, the appellate court granted appointed counsel's motion to withdraw pursuant to the rule in *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed the petition's dismissal. *People v. Brown*, No. 3-13-0139 (2014) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17                      2. *Defendant's First Section 2-1401 Petition*

- 4 -

¶ 18          In October 2013, defendant filed a *pro se* petition under section 2-1401 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1401 (West 2012)). The trial court recharacterized the petition as one under the Act. A series of appeals and a remand ensued that addressed the rules for such recharacterizations as set out in *People v. Shellstrom*, 216 Ill. 2d 45, 833 N.E.2d 863 (2005). *People v. Brown*, 3-13-0916 (2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19                    3. *Defendant's First Motion for Leave to File a*

*Successive Postconviction Petition*

¶ 20          In October 2018, defendant filed a motion for leave to file a successive postconviction petition along with the proposed petition. The trial court denied the motion, finding defendant had failed to establish the cause and prejudice required for a successive petition to be permitted. Defendant appealed. Counsel again moved for leave to withdraw pursuant to the rule in *Finley*, and the appellate court granted the motion. *People v. Brown*, No. 3-19-0018 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 21                    4. *Defendant's Second Section 2-1401 Petition*

¶ 22          In October 2022, defendant filed a second petition under section 2-1401 of the Procedure Code. That petition was pending at the time he filed the current appeal.

¶ 23                    E. The Current Motion for Leave to File a

Successive Postconviction Petition

¶ 24          In January 2023, defendant filed his second motion for leave to file a successive postconviction petition and his proposed successive petition. The motion asserted defendant was "legally innocent" and his petition raised a claim of actual innocence. The foundation of his proposed petition were claims that: (1) because no probable cause determination was made within

48 hours of his arrest, he should have been released and (2) section 5/109-1 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/109-1 (West 2008) (concerning procedural requirements applicable upon a person's arrest) is "facially unconstitutional, in that it is in conflict with federal law and federal regulations." He reasoned that the "vagueness of [section] 109-1 so infected Petitioner's conviction that his conviction violated/violates Due Process and the Supremacy Clause of the U.S. Constitution." Alternatively, he argued he had cause to file a successive petition in that he had just learned of a United States Supreme Court decision, *Manuel v. City of Joliet, Illinois*, 580 U.S. 357 (2017); according to his proposed petition, until *Manuel*, no remedy existed for the failure to make a probable cause determination within 48 hours. In the petition itself, defendant asserted his conviction was void due to the "facial unconstitutionality of *** [section] 109-1," and the failure of the trial court to hold a timely or sufficient probable cause hearing.

¶ 25        The trial court denied defendant's motion on February 2, 2023, finding "that the Defendant's motion claiming actual innocence is frivolous or patently without merit." Defendant filed a timely motion for reconsideration, asserting the court had failed to address his claim that his conviction was void. The court denied the motion for reconsideration and appointed OSAD to represent defendant on appeal.

¶ 26        This appeal followed.

¶ 27                                II. ANALYSIS

¶ 28        On appeal, OSAD has filed a motion to withdraw and a supporting brief in compliance with *Finley*. OSAD provided defendant a copy of his motion. Defendant has not responded. For the reasons that follow, we grant counsel's motion to withdraw and affirm the trial court's denial of leave to file a successive postconviction petition.

¶ 29                                  A. The Act

¶ 30          "The Act [citation] provides a statutory remedy for criminal defendants who have suffered substantial violations of their constitutional rights at trial." *People v. Wilson*, 2023 IL 127666, ¶ 22, 220 N.E.3d. 1068. "A postconviction proceeding is a collateral attack on a final judgment, and constitutional issues that were raised and decided on direct appeal are barred from postconviction consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *Id.* Typically, the Act permits a prisoner to file only one petition. 725 ILCS 5/122-1(f) (West 2022).

¶ 31          There are three exceptions to the rule against successive petitions. The first is statutory: under section 22-1(f) of the Act, a prisoner may, by leave of court, file a successive petition upon a showing of "cause" and "prejudice." *Id.* Second, Illinois courts have recognized fundamental fairness requires prisoners be allowed to make claims of actual innocence and that such claims be allowed in successive petitions. *People v. Coleman*, 2013 IL 113307, ¶¶ 84, 91, 996 N.E.2d 617. Third, because "[a] void order may be attacked at any time or in any court, either directly or collaterally" (*People v. Thompson*, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1205 (2004)), courts have held a successive petition is a viable method of challenging a void conviction or sentence (*e.g.*, *People v. Waldron*, 375 Ill. App. 3d 159, 160, 872 N.E.2d 1036, 1038 (2007)).

¶ 32                          1. *The Cause-and-Prejudice Exception*

¶ 33          Section 122-1(f) of the Act permits filing of a successive petition by leave of court if the petitioner demonstrates "cause" and "prejudice":

          "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner

shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2022).

¶ 34                                    2. *The Actual-Innocence Exception*

¶ 35        Although the Act contains only the cause-and-prejudice exception to the rule against successive petitions, Illinois courts have recognized that the fundamental fairness required under Illinois's constitution requires a prisoner be allowed to raise a claim of actual innocence under the Act. *Coleman*, 2013 IL 113307, ¶ 84.

> "Procedurally, a trial court should treat [a claim of actual innocence] like any other postconviction claim. [Citation.] Substantively, a court should grant relief only if the defendant has presented supporting evidence that is new, material, noncumulative and, most importantly, of such conclusive character as would probably change the result on retrial. [Citation.]" (Internal quotation marks omitted.) *Id.*

¶ 36                                    3. *The Exception for Void Judgments*

¶ 37        A claim that a judgment is void can be raised by means of a petition under the Act. "[A]n attack on a void judgment may be raised at any time," if an attack on a judgment as void is raised in a petition under the Act, the attack's viability does not depend on its satisfaction of the Act's requirements. *People v. Brown*, 225 Ill. 2d 188, 199, 866 N.E.2d 1163, 1169 (2007). Thus, although a voidness claim may *appear* in a petition under the Act, it is not a claim *under* the Act.

¶ 38                                    B. This Case

¶ 39 On appeal, OSAD addresses whether it could raise a claim that defendant's "conviction is invalid because the Illinois statute outlining post-arrest procedure is 'void' as it conflicts with precedent requiring an arrestee be provided a prompt judicial determination of probable cause," and that the trial court therefore erred. It concluded it would be frivolous to argue any such error exists. We agree.

¶ 40                                    1. *Voidness*

¶ 41 Illinois recognizes two circumstances under which a judgment can be void: (1) when a conviction is based on a facially unconstitutional law (*In re N.G.*, 2018 IL 121939, ¶¶ 37-38, 115 N.E.3d 102); or (2) when the court that rendered it lacked personal or subject matter jurisdiction (*People v. Castleberry*, 2015 IL 116916, ¶¶ 11-12, 43 N.E.3d 932). Defendant's conviction falls under neither category.

¶ 42                  a. Conviction Under a Facially Unconstitutional Law

¶ 43 It would be frivolous to argue any of defendant's convictions were based on facially unconstitutional laws. Defendant did not contend that Illinois's murder provisions are constitutionally infirm; we thus need not address whether those provisions made his conviction void. Concerning defendant's convictions of unlawful possession of a weapon by a felon, although some firearm offenses, such as section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), have been held to violate the second amendment (see *People v. Burns*, 2015 IL 117387, ¶¶ 19-20, 79 N.E.3d 159), unlawful possession of a weapon by a felon is not one of them.

¶ 44 Defendant's filings in the trial court asserted that constitutional defects in section 109-1 of the Criminal Procedure Code, concerning procedures applicable upon a person's arrest, made his convictions void, and he was thus legally innocent. Defendant's argument incorrectly

attempts to extend the rule that applies to a facially unconstitutional offence to his claim of constitutional error in the proceedings. It is true a conviction based on a facially unconstitutional law is a nullity:

> "To hold that a [criminal] statute is facially unconstitutional means that *the conduct it proscribed was beyond the power of the state to punish*. [Citation.] It was not, is not, and could never be a crime. [Citation.] That being the case, the conviction must be treated by the courts as if it did not exist, and it cannot be used for any purpose under any circumstances." (Emphasis added.) *N.G.*, 2018 IL 121939, ¶ 36.

However, the logic of this rule means it does not transfer to procedural provisions of section 109-1. Such a procedural statute could be facially unconstitutional. However, such a provision is never the *basis* for a final judgment; section 1-109 and similar statutes do not purport to give the courts power to render judgments. Thus, unsurprisingly, we find no authority for the proposition that an error in the procedure leading to the entry of a judgment, even one of constitutional dimension, renders a judgment void. Indeed, in *People v. Hubbard*, 2012 IL App (2d) 101158, ¶¶ 21-27, 964 N.E.2d 646, a Second District panel explained why such errors are not the basis for voidness claims.

¶ 45                          b. Lack of Personal Jurisdiction

¶ 46           It would also be frivolous to argue the trial court lacked personal jurisdiction over defendant. A trial court acquires personal jurisdiction over a defendant when that person is brought before the court. *People v. Massamillo*, 2020 IL App (3d) 190765, ¶¶ 16-17, 167 N.E.3d 264. Defects in the way that appearance has been brought about do not affect the court's personal jurisdiction. *Id.* Indeed, the court acquires personal jurisdiction despite a defendant's illegal arrest. *Id.*; see *People v. Bliss*, 44 Ill. 2d 363, 369, 255 N.E.2d 405, 409 (1970) ("[T]he power of a court

to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a forcible abduction."). If an illegal arrest does not prevent the court from acquiring personal jurisdiction of a defendant, *a fortiori*, a defect in his or her detention hearing is not an impediment to the court's jurisdiction.

¶ 47                                    c. Lack of Subject Matter Jurisdiction

¶ 48         It would be equally frivolous to argue the trial court lacked subject matter jurisdiction over defendant. Subject matter jurisdiction "refers to a court's power to hear and determine cases of the general class to which the proceeding in question belongs. [Citation.]" (Internal quotation marks omitted.) *Castleberry*, 2015 IL 116916, ¶ 12. Illinois's trial courts have subject matter jurisdiction over any "justiciable matter, *i.e.*, a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests. [Citation]." (Internal quotation marks omitted.) *Id.* ¶ 15. A court acquires subject matter jurisdiction in a criminal case when the offenses alleged in the charging instrument "fall within the general class of cases that the [trial] court has the power to hear and determine under the Criminal Code." *People v. Hughes*, 2012 IL 112817, ¶ 21, 983 N.E.2d 439. A trial court acquires subject matter jurisdiction when a defendant is charged with statutory offenses. See, *e.g.*, *People v. Rios*, 2013 IL App (1st) 121072, ¶ 16, 2 N.E.3d 368 (the court acquired subject matter jurisdiction of defendant when he was charged with attempted murder and aggravated discharge of a firearm, as the charges stated "a controversy appropriate for consideration by the trial court"). Here, the charges against defendant, first degree murder, aggravated discharge of a firearm, and unlawful possession of a weapon by a felon, all are statutory offenses of the class the court can hear under the Criminal Code. The court thus had subject matter jurisdiction.

¶ 49                                                2. *Actual Innocence*

¶ 50            We further note that, for reasons we have already explained, it would be frivolous to argue defendant was "legally" actually innocent. As we discussed, defendant's contention he was legally actually innocent incorrectly depended on the proposition that section 109-1's contribution to his conviction could be equated to him being convicted under a facially unconstitutional provision.

¶ 51                                              3. *Cause and Prejudice*

¶ 52            Finally, we point out it would be frivolous to argue defendant's petition met the statutory "cause and prejudice" requirement of section 122-1(f) of the Act. The "cause" portion of the provision states: "[A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2022). Defendant asserted he had "cause" based on his discovery of the 2017 Supreme Court case of *Manuel*, which, he said, changed the law by creating a remedy for a failure by the trial court to make a timely probable cause determination where none existed before. Defendant is not *wholly* wrong about the significance of *Manuel*. However, the fatal difficulty for defendant is that *Manuel* concerned the availability of *civil* relief for wrongful detentions in section 1983 actions (42 U.S.C. § 1983 (1996)). *Manuel*, 580 U.S. at 362, 369. *Manuel* thus did nothing to change the effect of the failure to make a timely probable cause determination on the validity of a conviction. It thus cannot be "cause" to file a successive petition under section 122-1(f) of the Act.

¶ 53            In sum, we conclude it would be frivolous for OSAD to argue that *any* of the grounds on which a court should allow the filing of a successive petition were applicable.

¶ 54                                              III. CONCLUSION

¶ 55    For the reasons stated, we conclude there are no issues of arguable merit defendant can raise on appeal. Accordingly, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 56    Affirmed.