NOTICE
Decision filed 01/10/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230673-U

NO. 5-23-0673

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 19-CF-30 |
| | ) | |
| RICHARD L. COFFEY, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentence for aggravated criminal sexual assault while armed with a dangerous weapon is affirmed where the sentence was neither excessive nor an abuse of discretion, because the record reflects that the sentencing court considered defendant's rehabilitative potential.

¶ 2    The defendant, Richard L. Coffey, appeals his 36-year sentence following remand for a new sentencing hearing. See *People v. Coffey*, 2023 IL App (4th) 190592-U. In defendant's prior appeal, the Fourth District[1] affirmed defendant's conviction. However, the Fourth District concluded that a new sentencing hearing was required, because the trial court improperly considered, in aggravation, defendant's prior aggravated unlawful use of a weapon conviction of the type held unconstitutionally invalid by *People v. Aguilar*, 2013 IL 112116, and *People v. Burns*,

_____
[1]Due to redistricting, defendant's appeal is now properly before the Fifth District.

1

2015 IL 117387. *Id.* ¶ 94. The Fourth District remanded this matter to the trial court to conduct a new sentencing hearing. *Id.* ¶ 96. On remand, the trial court sentenced defendant to 36 years in prison. Now, on appeal, defendant argues that the court did not properly consider his rehabilitative potential and that the sentence is excessive. For the reasons that follow, we affirm defendant's sentence.

¶ 3                                 I. BACKGROUND

¶ 4     Due to the thorough and lengthy recitation of the facts in the earlier appeal, we borrow liberally from the Fourth District's order and recite only the facts necessary for the resolution of this appeal. *Coffey*, 2023 IL App (4th) 190592-U. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5     In January 2019, defendant was charged with three offenses, including (1) aggravated criminal sexual assault with a dangerous weapon, a Class X felony punishable by 6 to 30 years in the Illinois Department of Corrections (IDOC) with a mandatory 10-year enhancement (count I) (720 ILCS 5/11-1.30(a)(1), (d)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018)); (2) unlawful restraint, a Class 4 felony punishable by 1 to 6 years' incarceration due to extended term sentencing based on a prior Class 2 aggravated-unlawful-use-of-weapon (AUUW) conviction[2] (count II) (720 ILCS 5/10-3(a) (West 2018); 730 ILCS 5/5-4.5-45(a) (West 2018)); and (3) criminal sexual assault, a Class 1 felony punishable by 4 to 15 years' incarceration (count III) (720 ILCS 5/11-1.20(a)(1) (West 2018); 730 ILCS 5/5-4.5-30(a) (West 2018)). Six months later, the State added an additional count of aggravated criminal sexual assault with bodily harm, also a Class X felony with a sentence range of 6 to 30 years' incarceration (720 ILCS 5/11-

---

[2]Defendant was not eligible for the extended term sentence on count II due to the fact that the defendant's prior Class 2 AUUW conviction was voided. See *supra* ¶ 2.

1.30(a)(2) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018)). A jury convicted defendant of all four counts.

¶ 6    At trial, defendant's victim, T.G., testified that she met defendant a few days before the offenses, and that she texted back and forth with defendant in an effort to purchase drugs. T.G.'s drug of choice was methamphetamine. On January 16, 2019, under the guise of getting T.G.'s money back for some bad or look-alike drugs he provided to her, defendant drove T.G. around Mattoon, Illinois, and stopped at a vacant house. Defendant told T.G. that they were going to meet the dealer at this location. Defendant, while wearing gloves, proceeded to strike T.G. about her head and face six to eight times. Defendant held T.G.'s head down while he drove her around for another 5 to 10 minutes. After telling T.G. that he heard that she was working for the police, defendant said he was going to check her for wires. Defendant removed T.G.'s coat and sweater, pulled the sweater over her head, and told her to put her hands behind her back. T.G. further testified that defendant secured her hands with duct tape and then put duct tape over her mouth by wrapping it around her head. Defendant proceeded to sexually assault T.G. from behind, penetrating her vagina with his penis. T.G. said that assault lasted anywhere from 45 to 90 seconds.

¶ 7    Before the assault, T.G. believed that she felt the blade of the knife from her purse being held against her back by defendant. T.G. feared being killed because defendant told her, "You'll be lucky if I let you go" when he beat her earlier. Defendant eventually let T.G. go, cutting the duct tape that was binding her wrists. According to T.G., defendant made T.G. promise not to tell anyone what happened, told her to leave town, and said that someone would be watching her house. T.G. ran a few blocks to the house of some people that she knew, and they called the police. The police took photos of T.G. at that location. The photos were admitted into evidence. The photos

3

revealed injuries to T.G.'s face and that she still had duct tape attached to her wrists and around her neck.

¶ 8 Defendant initially told the police that he loaned his car to another person on the night of the assault and claimed that he had an alibi. During a subsequent interview, when told that his alibi did not extend to the time of the assault, defendant claimed that the sexual conduct was consensual, and that T.G. asked to be tied up and hit.

¶ 9 Other evidence produced at trial linked defendant to the offenses. A search of defendant's car produced a cell phone belonging to T.G., a folding pocketknife and a set of brass knuckles, a glove, and various red stains. Blood found on the pocketknife, the glove, and from swabs of the front seat of defendant's car was identified as belonging to T.G. Police also searched defendant's home and found T.G.'s pocketknife and a roll of duct tape. T.G.'s blood was found on the duct tape and her DNA was found on the knife.

¶ 10 As indicated above, defendant's conviction was affirmed on appeal, but the matter was remanded for a new sentencing hearing due to the fact that the trial court erroneously considered, in aggravation, defendant's 2009 AUUW conviction which was based on a statute that was later found to be unconstitutionally invalid by *People v. Aguilar*, 2013 IL 112116, and *People v. Burns*, 2015 IL 117387. *Coffey*, 2023 IL App (4th) 190592-U, ¶ 94.

¶ 11 Upon remand, the original trial judge retired. Therefore, the matter was assigned to a different judge. A new presentence investigation report was filed on August 2, 2023, and a new sentencing hearing was held on August 11, 2023. The newly assigned judge indicated that he read the transcript of the jury trial, and noted that, pursuant to the prior appellate court order, he would not consider the 2009 AUUW in aggravation.

¶ 12     At the sentencing hearing, the State called Deputy Chief Ryan Hurst of the Mattoon Police Department to the stand. Deputy Chief Hurst testified that he was a member of the police department for 18 years, and that he investigated this matter. On January 16, 2019, Deputy Chief Hurst responded to a call about the offense and went to the home where T.G. fled following her release by defendant. There, he observed T.G. and described the scene as being "[l]ike a movie. It didn't seem real." Deputy Chief Hurst testified that T.G. had duct tape around her wrists and neck, and that she was "bawling." Deputy Chief Hurst observed blood and bruising on T.G.'s face. The State introduced photos taken of T.G. at the residence which were admitted and tendered to the court. Deputy Chief Hurst testified that he interviewed T.G. the following day. During the second interview, Deputy Chief Hurst learned that a suspect had been located during a traffic stop. Deputy Chief Hurst took T.G. to the scene of the traffic stop for a show-up. Defendant was one of the two people in the stopped vehicle. According to Deputy Chief Hurst, upon seeing defendant, T.G. immediately started crying and shaking. T.G. stated, "That's him. That's him." As they drove away from the show-up, Deputy Chief Hurst had to pull over so T.G. could vomit. Deputy Chief Hurst also testified that he kept in contact with T.G. since the offense, and that T.G. continued to struggle with the emotional trauma from the assault. Deputy Chief Hurst estimated that he investigated "probably *** hundreds of sexual assault allegations during his career, and that none of those investigations came close to brutality and the heinous nature of this offense.

¶ 13     The State then called Detective Alex Hesse of the Mattoon Police Department. Hesse testified, in part, about his interviews of defendant and how, as the investigation unfolded, defendant's story evolved from an alibi to his claim that the conduct was consensual. Detective Hesse also testified that he had been involved in 104 sexual assault investigations to date, and that he had never observed a victim battered as badly as T.G. had been battered.

¶ 14    Defense counsel resubmitted letters written on defendant's behalf prior to the original sentencing hearing and also submitted new letters. Defendant gave a statement in allocution. Defendant admitted to striking T.G. but maintained that the sexual assault did not occur. Defendant conceded that he should not have hit T.G. Noting a lack of DNA evidence, defendant expressed his belief that the case was racially and politically motivated. Defendant touched upon the hardships he and his children suffered because of his incarceration. Acknowledging his prior incarcerations, defendant stated that he always used that time to try to better himself. Finally, defendant apologized to T.G. for what transpired that night and wished that things had been different on that night, and that he was willing to move on.

¶ 15    T.G. reread her original victim impact statement, during which she expressed the terror she felt during the assault and how she felt destroyed by defendant's actions. T.G. provided the court with an update, noting that her first statement was about how she felt during the attack and the months thereafter. She stated that although she was deeply affected by the assault, she did not know the depths to which this incident would take her. For a period of time, T.G. believed that she was okay, but then the events started haunting her on a daily basis. Although she previously achieved sobriety, T.G. started having hallucinations. She stated that she could hear defendant's voice saying things that he said to her that night. Her nightmares became so bad that she did not want to sleep, and after nearly three years of sobriety, she again turned to drugs. T.G. said that she was finally clean again, and that she wanted to heal and to not have so much hate in her heart. T.G. spoke of the fear she felt when she learned that defendant returned to the county jail for resentencing. She stated that she would never feel comfort or ease unless the system gave her justice as it had the first time.

¶ 16    The State asked for the imposition of the same 36-year sentence defendant received at his prior sentencing hearing, noting defendant's refusal to accept responsibility and arguing some of the statutory factors in aggravation, including that defendant had a criminal history, that defendant's conduct threatened or actually caused violence, and that such a sentence was necessary to deter both others and defendant.

¶ 17    Defense counsel asked for the minimum sentence of 16 years in prison. In support of this request, defense counsel noted defendant's rehabilitative potential as demonstrated by progress that defendant made since the last sentencing hearing. Specifically, counsel argued that defendant was engaged in treatment for his substance abuse issues, that he was compliant with medication for his post-traumatic stress disorder and his depression, and that defendant was enrolled in educational and trade programs in the IDOC. Defense counsel noted that defendant previously demonstrated an ability to hold a job, and as evidenced by the letters in support, that defendant would have job opportunities upon his release from prison. Defense counsel also touched briefly on defendant's difficult childhood as mentioned in the support letter written by defendant's mother, including the fact that defendant's father was very abusive, raped and beat defendant's mother, and lived a drug gang lifestyle. The letter from defendant's mother also stated that defendant, at the age of six, witnessed his father brutally stab a man who was sitting two feet away from the defendant. Counsel also remarked on the fact that at the age of 12 and in response to an ultimatum from his mother that he needed to stop selling drugs or leave the home, defendant opted to move out of the house instead of giving up the gang lifestyle.

¶ 18    At the conclusion of the arguments of counsel, the trial court took a recess to review the letters submitted in support of defendant. Following the recess, the judge stated that he reviewed the trial transcript, the presentence investigation, the history, character, and attitude of the

7

defendant, the evidence and statement in allocution, the victim impact statement, the statutory factors in aggravation and mitigation, and "[took] due regard for the circumstances of the offense." The court noted that a jury convicted defendant of all four counts, and that for the purposes of sentencing, counts II, III, and IV would merge with count I.

¶ 19   The trial court found that the trial testimony and the State's photographs "illustrate[d] the brutal and heinous nature of this offense." While the court noted that defendant had "not had an easy life" and that he had "been given few, if any, of the benefits that most of us have received," the court also noted that defendant remained "responsible and accountable for his actions." The court further stated that it was "very disturbed" by defendant's lack of remorse and lack of acceptance of responsibility. The court believed defendant's apology to T.G. was insincere.

¶ 20   The judge further found that defendant's conduct in the commission of the offense caused serious and continuing harm to T.G. Although the court again mentioned that it was not considering the 2009 AUUW, the court found that defendant had a criminal history and prior delinquency, not just in the form of the criminal history as set forth in the presentence investigation, but also with regard to statements defendant made in the presentence investigative report with other criminal activity self-reported by defendant. The court did not find any statutory factors in mitigation applied. Finally, the court found that defendant's behavior in the commission of these offenses required both specific and general deterrence. The court sentenced defendant to 36 years in prison, including the 10-year enhancement required by statute. 720 ILCS 5/11-1.30(a)(1), (d)(1) (West 2018).

¶ 21   Defense counsel filed a motion to reconsider sentence on August 14, 2023. The trial court heard and denied the motion on September 11, 2023. This timely appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, defendant contends that the trial court abused its discretion by sentencing defendant to 36 years in prison, the maximum sentence under the facts of this case. Specifically, defendant argues that the court failed to abide by the mandate of the Illinois Constitution and the Illinois Supreme Court that a sentencing court consider the defendant's rehabilitative potential as one of its objectives in fixing an appropriate sentence. Defendant asks this court to use its power under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to either reduce defendant's sentence to a prison term that we find appropriate or, in the alternative, remand for a new sentencing hearing with instruction to the circuit court as to an appropriate term of years. For the reasons that follow, we decline to do so and affirm defendant's sentence.

¶ 24    As noted above, the trial court sentenced defendant for the offense of aggravated criminal sexual assault with a dangerous weapon in violation of section 11-1.30(a)(1) of the Criminal Code of 2012 (Code). 720 ILCS 5/11-1.30(a)(1) (West 2018). This is a Class X felony. Normally, Class X felonies carry a sentence range of 6 to 30 years in prison (730 ILCS5/5-4.5-25 (West 2018)); however, section 11-1.30(a)(1) of the Code carries a mandatory enhancement of 10 years (720 ILCS 5/11-1.30(d)(1) (West 2018)). Accordingly, defendant's sentence range following trial was for a range of 16 to 40 years in prison. On remand, the State did not present evidence in aggravation concerning defendant's conduct since his original sentencing hearing. Consequently, the maximum sentence the trial court could impose on remand was 36 years in prison. 730 ILCS 5/5-5-4(a) (West 2018) ("Where a  *** sentence has been set aside on direct review ***, the court shall not impose a new sentence for the same offense *** which is more severe than the prior sentence *** unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing.").

9

¶ 25    The Illinois Constitution of 1970, article I, section 11, requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A sentencing court must not only consider rehabilitative factors in imposing a sentence, it must also make rehabilitation an objective of the sentence." *People v. Wendt*, 163 Ill. 2d 346, 352-53 (1994). In fashioning an appropriate sentence, the trial court must consider the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits and age" and impose a sentence based on the circumstances of each case. (Internal quotation marks omitted.) *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. The court must also carefully consider the statutory factors in mitigation and aggravation. *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). The court is not, however, required to recite and assign a value to each factor considered. *Pina*, 2019 IL App (4th) 170614, ¶ 19. There is a presumption that a circuit court considers all mitigating evidence presented. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 33.

¶ 26    A trial court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Such deference is granted "because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence." *Id.* "If a sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.*

¶ 27    Defendant spends a significant portion of his brief discussing his traumatic upbringing, including being exposed to a gang lifestyle of drugs and violence from birth. He also discusses his teenage years spent living away from his mother in an apartment with other gang members, again

surrounded by drugs and violence. Specifically related to this appeal, defendant notes that he presented new evidence in mitigation at the sentencing hearing in the form of his mother's letter detailing the violence in the home, including her own beatings and rapes at the hands of defendant's father, and that defendant, at the age of six, witnessed his father brutally stab a man who was sitting two feet away from the defendant. Defendant argues that he previously demonstrated rehabilitative potential by graduating high school and being gainfully employed. Defendant also contends that he made progress during his most recent incarceration by enrolling in various programs in the IDOC. Against this backdrop, defendant argues that in "striking the constitutional balance, keeping [his] rehabilitation as one of its goals," not only would the trial court "have given this history considerable weight in mitigation, it would have been required to give remarkable weight to the fact that, despite [this background, defendant] showed rehabilitative potential through his education and employment history."

¶ 28     While it is true a trial court's sentencing discretion is "not unfettered" (*People v. O'Neal*, 125 Ill. 2d 291, 297 (1988)) and that the appellate court was never meant to be a "rubber stamp" for the sentencing decisions of the trial court (*People v. Woodson*, 2024 IL App (1st) 221172, ¶ 89), it is also axiomatic that this court "must not substitute its judgment for that of the trial court merely because [we might] have weighed" the pertinent sentencing factors differently. *Stacey*, 193 Ill. 2d at 209. As noted above, following his conviction for this offense, defendant faced a sentence of 16 to 40 years in prison. 720 ILCS 5/11-1.30(a)(1), (d)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). Defendant received four years less than the maximum allowed sentence during the first sentencing hearing, and he received the same sentence on remand. Since defendant's sentence falls within the statutory limits, we will not overturn it absent an abuse of discretion. *Bunning*, 2018 IL App (5th) 150114, ¶ 16.

11

¶ 29    Although the sentencing court never expressly mentioned defendant's potential for rehabilitation, the record reflects that defendant's rehabilitative potential was a focus of defense counsel's argument in support of a lesser sentence. A sentencing "court has no obligation to recite and assign value to each factor presented at a sentencing hearing." (Internal quotation marks omitted.) *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Indeed, "it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it." (Internal quotation marks omitted) *Id.* Moreover, "[a] defendant's rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense." *People v. Coleman*, 166. Ill. 2d 247, 261 (1995). Here, the court stated that it reviewed the trial transcript, the presentence investigation, the history, character, and attitude of the defendant, the evidence and statement in allocution, the victim impact statement, the statutory factors in aggravation and mitigation, and "[took] due regard for the circumstances of the offense."

¶ 30    In fashioning defendant's sentence, the trial court noted that it considered the statutory factors in aggravation and mitigation, and that it found that none of the statutory factors in mitigation applied to defendant. Despite defendant's contentions otherwise, the court expressly considered defendant's traumatic childhood, noting that defendant "has had a life where he has been given few, if any, of the benefits that most of us have received during our lifetime." After commenting on defendant's suffering, however, the court concluded that defendant remained responsible and accountable for his actions, and that the public generally and the victim specifically "demand and deserve that responsibility and accountability."

¶ 31    The record demonstrates that the trial court considered the evidence received both at trial and at sentencing to fashion a sentence which reflected the brutal and heinous nature of defendant's conduct. The court expressly considered defendant's lack of remorse and failure to accept

12

responsibility for his actions. The court also took notice of the ongoing emotional trauma experienced by the victim. The court further found that defendant's behavior in the commission of the offense required "deterrence both specific and general." Defendant was 34 years old when he committed this offense and was eligible for the full range of criminal sanctions prescribed by Illinois law, including the maximum sentence. Based on the record before us, we cannot conclude that the court failed to consider defendant's rehabilitative potential or to accord it its proper weight in sentencing defendant.

¶ 32    The factors considered by the sentencing court provide a sufficient basis for the lengthy prison sentence imposed in this matter. For these reasons, under the facts and circumstances of this case, we do not find that defendant's sentence was excessive or that that court abused its discretion in sentencing defendant.

¶ 33                                III. CONCLUSION

¶ 34    For the foregoing reasons, we affirm the judgment and sentence of the circuit court of Coles County.


¶ 35    Affirmed.