NOTICE

Decision filed 07/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240179-U

NO. 5-24-0179

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 19-CF-30 |
| | ) | |
| RICHARD L. COFFEY, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly dismissed defendant's postconviction petition where the issues were waived or otherwise lacked merit. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Richard L. Coffey, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that there is no reasonably meritorious argument that the court erred in doing so. Accordingly, it has filed a motion for leave to withdraw as counsel on appeal and a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has given him ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion and supporting

1

memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                BACKGROUND

¶ 4     Defendant was charged with aggravated criminal sexual assault, criminal sexual assault, and unlawful restraint as the result of an incident with T.G. on January 16, 2019. Before trial, defendant moved to suppress statements he made to the Mattoon Police Department. He argued that detectives continued to question him after he invoked his right to counsel, citing, *inter alia*, the following exchange with Deputy Chief Sam Gaines:

> "COFFEY: I'm ready to see my lawyer now man, they already trying to *** railroad me talking about I raped somebody man. Give me my lawyer man.
>
> GAINES: It's hot in here ***. Yeah, I mean you can have your lawyer. What's done.
>
> COFFEY: That's crazy chief, I didn't rape nobody chief."

¶ 5     The State responded that defendant had initiated the conversations after requesting a lawyer. In addition to the above passage, the State cited a second exchange in which defendant said, "No, I'm just let my lawyer handle it, I'm just, *** you told them I raped you, bit [*sic*] I don't have to rape you we've been having sex all *** week what the *** do I have to rape you for?"

¶ 6     The court, which had watched video of the interrogation prior to the hearing, found that defendant knowingly waived his right to counsel. The court found that, to the extent that defendant unambiguously requested counsel, he immediately restarted the conversation.

¶ 7     During jury selection, prospective juror Thomas Cisna stated that he went to school with the trial judge and that, when they saw each other in public, they would talk. He denied "hanging out" with the judge. Cisna maintained that his relationship with the judge would not affect his

2

ability to be fair and impartial. He later told the court that his sister-in-law worked as a paralegal for the prosecutor's office but denied knowing the trial prosecutors. Cisna added that he did not talk with his sister-in-law about specific cases. He denied that his relationship with his sister-in-law would affect his ability to be fair and impartial. Cisna further maintained that he did not feel like he owed his sister-in-law an explanation for any verdict that he came to and that he would not discuss the case with her. Trial counsel did not strike Cisna for cause or use a peremptory strike.

¶ 8　At trial, T.G. testified that, on January 14, 2019, she and a friend were trying to buy methamphetamine from a man known as J. Two of her friend's friends drove her to an apartment, took her money, and drove away, leaving her stranded. She met defendant, who told her that he was J. He agreed to give her a ride. On the way, they discussed T.G. buying drugs from him and they exchanged phone numbers.

¶ 9　Over the next several days, they exchanged text messages. On the afternoon of January 16, 2019, defendant texted T.G. to say he was trying to get some meth. He later went to her house, where she paid him $50 for what she believed to be meth. Later, she bought more of the substance. She began to suspect that the substance was actually carpet freshener, but she injected it anyway. When she texted defendant to complain, he agreed to take her to the drug dealer to get her money back.

¶ 10　Defendant picked T.G. up, drove around for 15 to 20 minutes, then backed into a driveway. With no warning, he punched her in the face six to eight times. When she started screaming, he put his hand over her mouth and told her to stop. She bit his gloved hand. He held her head down and resumed driving, telling her that her ex-boyfriend had paid him to hit her.

¶ 11　Defendant drove around for another 5 to 10 minutes then stopped again. He told T.G. he heard she was working with the police, so he was going to check her for wires. He took off her

3

coat and sweater, then wrapped her sweater around her head. T.G. heard what she thought was "duct tape," then defendant taped her wrists behind her back, also placing tape around her head and over her mouth. He told T.G. to turn around with her knees facing the back seat and inserted his penis in her vagina for 45 to 90 seconds. She felt a cold object against her back, which she surmised was the knife she kept in her purse. T.G. believed defendant ejaculated.

¶ 12    After the incident, defendant told T.G. to keep the sweater on her head for 15 seconds after he drove away. He said that he would let her go, but only if she promised not to tell anyone what happened. He also told her she would have to leave Mattoon, and if she did not, "someone would be watching [her] house." After about five minutes, he let her off near the home of an ex-boyfriend's parents, Russell and Allethia Shoot. T.G., Russell, and Allethia all testified that T.G. banged on their door and yelled at about 8:30 p.m., and Russell let her in. The following day, T.G. identified defendant as the man she knew as J.

¶ 13    On January 17, police interviewed defendant, who said that the previous night he had loaned his car to the actual J. After the police were unable to locate J, they interviewed defendant again. The State played portions of both interviews for the jury. In the second, defendant never confessed to the crime, but changed his story numerous times. The State also presented physical evidence, including evidence of T.G.'s blood on the passenger seat and on a glove found in defendant's car.

¶ 14    The jury found defendant guilty. The court sentenced him to 36 years' imprisonment for aggravated criminal sexual assault, merging all other counts.

¶ 15    On direct appeal, the Fourth District affirmed the conviction but remanded for a new sentencing hearing after finding that the trial court had considered an invalid prior conviction in aggravation at sentencing. *People v. Coffey*, 2023 IL App (4th) 190592-U. After remand, the court

4

again sentenced defendant to 36 years' imprisonment. Defendant again appealed. Following redistricting, the appeal was taken to this court, and we affirmed. *People v. Coffey*, 2025 IL App (5th) 230673-U.

¶ 16    On December 1, 2023, defendant filed a postconviction petition. He raised four principal claims: (1) that the police had planted evidence—T.G.'s cellphone—in his car; (2) the State withheld exculpatory photos; (3) defendant's statements to police were involuntary because they continued to question him after he invoked his right to counsel; and (4) a juror who knew the judge and whose sister-in-law worked for the prosecutor's office, as well as other jurors who had been crime victims, were allowed to serve. Defendant did not attach any affidavits or other evidence.

¶ 17    On January 5, 2024, the trial court summarily dismissed the petition. Defendant timely appealed.

¶ 18                                        ANALYSIS

¶ 19    OSAD concludes that there is no reasonably meritorious argument that the court erred by summarily dismissing the petition as all the issues were either waived or lacked merit. Further, the dismissal was procedurally proper. We agree.

¶ 20    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008).

¶ 21    Proceedings under the Act are collateral. *People v. Edwards*, 2012 IL 111711, ¶ 21. As a result, issues that were decided on direct appeal or in previous collateral proceedings are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)). To

5

survive summary dismissal, a petition need present only "the gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 22　Section 122-2 of the Act mandates that a postconviction petition "clearly set forth the respects in which petitioner's constitutional rights were violated" and that it "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2024). Thus, the supreme court has repeatedly held that the failure to attach affidavits or other supporting documentation or explain its absence is "fatal to petitioner's claims." *People v. Turner*, 187 Ill. 2d 406, 414 (1999).

¶ 23　Defendant's first claim was that he was denied due process because the police planted evidence. OSAD determined that this claim derived from the Fourth District's opinion on direct appeal. Its recitation of the evidence noted that T.G. testified that defendant gave her back her cellphone before she got out of the car. However, police witnesses later testified that they recovered her cellphone while searching the car. This falls far short of proving that police planted the evidence. It is far more likely that one witness was simply mistaken. Defendant presented no additional evidence supporting his contention that the police planted the evidence.

¶ 24　In any event, evidence of the location of T.G.'s cellphone was collateral to the issue of defendant's guilt. Evidence that the phone was found in his car proved, at most, that T.G. was in defendant's car at some point, which defendant never really denied.

¶ 25　Defendant next claimed that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose photos, "which could have had a different perception and out-look at trial." The prosecution violates *Brady* when it suppresses evidence that was both favorable to the defendant and material to the case. *People v. Hobley*, 182 Ill. 2d 404, 432-33 (1998).

6

¶ 26    Defendant's allegation is merely conclusory. He does not specify what photographs the State allegedly withheld or describe what they showed. Thus, he cannot establish that the State violated *Brady*. Nonfactual and nonspecific assertions which merely amount to conclusions are insufficient to require a hearing under the Act. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).

¶ 27    Defendant's third claim, that the police continued to question him after he invoked his right to counsel, was litigated prior to trial, with the trial court finding that he continued to talk with the officers about the case after requesting counsel. The petition includes no new evidence relevant to this issue. Thus, all the facts necessary to decide this issue were in the record at the time of defendant's direct appeal. Because the issue could have been raised there but was not, it is forfeited. *Blair*, 215 Ill. 2d at 443-44. Moreover, defendant does not contend that direct-appeal counsel was ineffective for failing to raise this issue. See *People v. Williams*, 209 Ill. 2d 227, 233 (2004) (forfeiture rule relaxed where, *inter alia*, the waiver stems from the ineffective assistance of appellate counsel).

¶ 28    In any event, the court denied defendant's motion after viewing the video, which shows defendant repeatedly referring to a lawyer but then continuing the conversation. When an accused invokes his right to counsel during custodial interrogation, he may not be interrogated further without counsel unless he or she initiates further communication. *People v. Woolley*, 178 Ill. 2d 175, 198 (1997) (citing *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)). "If the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are not admissible as substantive evidence at trial." *Id.*

¶ 29    *Edwards* and its progeny prescribe a two-part inquiry to decide whether a defendant's statements in response to police interrogation following his or her request for an attorney are admissible. *Id.* "The preliminary inquiry is whether the accused, rather than the police, initiated

further discussion after invoking the right to counsel." *Id.* "In order for the accused to 'initiate' further conversation, for these purposes, the accused must make a statement that evinces a 'willingness and a desire for a generalized discussion about the investigation.' " (Internal quotation marks omitted.) *Id.* (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983)).

¶ 30    If the defendant did initiate the conversation with authorities, the court moves to a second inquiry: whether the waiver of the right to counsel was knowing and intelligent under all the circumstances, including the fact that the accused reopened dialogue with the police. *Id.* (citing *Bradshaw*, 462 U.S. at 1044).

¶ 31    Here, the video shows defendant repeatedly requesting counsel but then continuing to talk about the case. He does not appear to be confused or under duress to the point of calling into question the court's finding that his waiver of counsel was knowing and voluntary.

¶ 32    The final issue raised in the petition is that defendant was denied a fair trial because a juror, Cisna, was biased because he went to school with the trial judge and his sister-in-law worked for the state's attorney's office.

¶ 33    A defendant has the right to be tried by a jury that can and will decide the case based solely on the evidence presented. *People v. Olinger*, 176 Ill. 2d 326, 353 (1997). Here, Cisna stated that, despite these relationships, he could be fair to both sides. Thus, the court did not err in accepting him as a juror. See *People v. Buss*, 187 Ill. 2d 144, 192 (1999) (juror stated that, despite her relationship to an employee of the sheriff's department, she could be fair and impartial).

¶ 34    Defendant also complained about the presence in the venire of several people who had been crime victims. However, OSAD notes that none of these prospective jurors actually served on the jury. Thus, all of defendant's issues lack merit and the court did not err substantively in dismissing the petition.

¶ 35   Finally, OSAD concludes that it has no meritorious argument that the trial court's dismissal of the petition was procedurally improper. A court may summarily dismiss a postconviction petition as frivolous and patently without merit only within the first 90 days after the defendant files the petition. 725 ILCS 5/122-2.1(a) (West 2024). The court must make this decision without any input from the State. *Gaultney*, 174 Ill. 2d at 418. Here, defendant filed his petition on December 1, 2023. The court summarily dismissed it on January 5, 2024, well within the 90-day period. The State provided no input into the proceedings. Thus, there is no meritorious argument that the circuit court failed to follow proper procedure in summarily dismissing the petition.

¶ 36                                    CONCLUSION

¶ 37   As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 38   Motion granted; judgment affirmed.